VOET, Appellant, v. LAMPERT LUMBER CO., Respondent

(15 N. W.2d 579.)

(File No. 8695.  Opinion filed September 12, 1944.)

**E. B. Harkin,** of Aberdeen, for Plaintiff and Appellant.

**George H. Fletcher,** of Aberdeen, for Defendant and Respondent.

RUDOLPH, J.   In this action Mildred E. Voet, special administrator of the estate of her husband Gerhard J. Voet, deceased, seeks to recover damages for her husband's death. The material facts are not in serious dispute.   The defendant Lampert Lumber Company owns and operates a lumber yard in the City of Aberdeen.   The defendant had not complied with the South Dakota Workmen's Compensation Act, had not provided the insurance therein required, and had not exempted itself from the provisions of said Act.   Several years ago the defendant constructed a building and Gerhard

J. Voet was employed by the contractor to help with the construction. As a part of his work Voet had assisted in installing an overhead door in this building. This door was 12 feet in width, 11 feet high and weighed approximately 700 pounds. The door was raised and lowered by means of tortion springs placed above the door and connected by a cable on each side of the door. By reason of this spring and cable device the door could be operated by one man but when this device was out of order it would take several men to open or close the door. On two occasions prior to the time in question the spring and cable device on the door failed to function and on each occasion the defendant called the contractor who had constructed the building who in turn called upon Voet to repair the door. In June 1942 the door again failed to operate and the defendant, being unable to contact the contractor, got in touch with Mr. Voet and asked him to make the necessary repairs to the door. The manager of the defendant company instructed the assistant manager to contact Mr. Voet and ask him to be at the lumber yard at 7 o'clock in the morning to repair the door. However, Mr. Voet was unable to do the work at the lumber yard at 7 o'clock in the morning and advised the assistant manager that he would be at the yard at 7 o'clock in the evening. The assistant manager called the manager and advised him that Mr. Voet would be at the yard at 7 o'clock that evening. The manager misunderstood and assumed that Mr. Voet was to be at the yard at 7 o'clock the next morning. The manager made arrangements with employees of the company to be at the lumber yard at 7 o'clock in the morning to raise the door. The evidence fairly discloses that one of the objects in having the door raised was to provide Mr. Voet a place upon which to work while repairing the door. It appears that to make the necessary repairs it was necessary to turn a certain wheel located at the top of the door for the purpose of obtaining the desired tension upon the spring which provided the lifting strength for the door. This tension wheel was turned by the use of two iron rods which were inserted in holes drilled in the wheel and used as levers. When the tension upon the spring was sufficient for the purpose required a set screw was tightened which held the wheel

and thereby retained the tension upon the spring. With the door opened it was possible for any one turning this wheel to sit or stand upon the door and pull toward himself, thus working in a place of comparative safety. Immediately above the doorway and at the level of the tension wheel there was a shelf of plank 12 inches in width and extending throughout the width of the doorway. With the door closed it was possible to go up on this shelf of plank 11 feet above the ground and insert the rod in the tension wheel, turn the wheel and thereby place the necessary tension upon the spring. However, from this shelf it was necessary to push outward and downward to turn the wheel in the proper direction. Mr. Voet and the assistant manager arrived at the lumber yard at 7:30 in the evening, but, due to the misunderstanding of the manager, no one was there to aid in opening the door. However, Mr. Voet proceeded with the work, attached the cables to the bottom of the door and then he and the assistant manager ascended to this narrow shelf at the top of the door for the purpose of tightening the tension wheel. The finding of the trial court as to what then happened is as follows:

"The tightening of the tension wheel was attempted by said Voet and said Fellers * * * from this shelf or ledge to which they had mounted; said Voet kneeling upon the shelf on one side of the tension wheel and said Fellers standing erect upon the other side of the tension wheel. Said Voet inserted a lever in the hole at the top thereof and pushed outward and downward until the next hole was exposed, into which Fellers inserted his bar, holding the tension thus gained until Voet could withdraw his rod, hand it to Fellers, take hold of the upper rod and push outward and downward thereon until the next hole was exposed, this operation being repeated successively until almost all of the required tension had been secured. Each such operation tightened the spring, increased its lifting power and reduced the physical labor which would have been required to lift the door, and also requiring greater force to turn the wheel.

"As the winding procedure was nearly finished, said Voet fell headfirst to the floor 11 feet below, receiving the injuries which caused his death."

The court found as follows:

"This Court is unable to find as a matter of fact, what, if anything caused his fall, but the same could have resulted from a slipping of the bar from its hole in the tension wheel due to outward and downward pressure thereon, or from a slipping of his grasp upon the bar, or from loss of balance, or possibly other cause, no one of which was previously anticipated by said Voet or said Fellers, or was reasonably to be anticipated by any of the parties.

"Had the door been raised to the height of one or more sections either before undertaking the tightening of the wheel, or after it had been partially tightened, the upper portion of the door so raised would have constituted a shelf or platform upon which the said workman could stand or sit and perform said operation with complete safety. The two men could have raised said door to that height at any time before undertaking the tightening of the spring, or after the tightening had been partially completed, there being available any amount of material suitable for use as pries and blocks if needed. The accident occurred at a time when sufficient tension had already been applied to said spring to aid materially in raising the door from the floor had such been attempted.

"The tightening operation could also have been performed from a ladder from which the person tightening the spring would have worked in an upright position with his feet about six feet from the floor. The procedure adopted by said Voet was one of several which were available, and was of his own selection.

"The defendant company was not guilty of any negligence which caused or contributed to the death of said Gerhard J. Voet."

Our Workmen's Compensation Act provides in SDC 64.0109.

"No employer, who elects not to operate under this title, shall, in any action at law by an employee who has not exempted himself from the provisions of this title to recover damages for personal injury or death by accident, be permitted to defend any such action upon any of the following grounds:

"(1)  That the employee was negligent;

"(2)  That the injury was caused by the negligence of a fellow employee; or

"(3)  That the employee had assumed the risk of the injury."

The defendant having elected not to operate under the Act and Voet having not exempted himself from its provisions, the rights of the parties hereto as predicated upon the above statement of facts must be determined under the provisions of the quoted SDC 64.0109. The trial court found that Voet was an employee of the defendant within the meaning of the Workmen's Compensation Act, and for the purposes of the discussion which immediately follows we accept such finding, and assume that the relationship existing between the defendant and Voet was that of employer and employee.

As disclosed by the findings set out above, the trial court concluded that the evidence failed to show any actionable fault on defendant's part, and denied plaintiff any recovery. The plaintiff has appealed.

■ ■ Construing SDC 64.0109, this court has held that an employer who elects not to operate under the Act will not be heard in any action for damages by an injured employee to interpose the defense of contributory negligence, negligence of a fellow servant or assumption of risk, but an employee to successfully maintain such action must plead and prove the employer's actionable fault. Stevenson v. Douros, 58 S. D. 268, 235 N. W. 707. We have further held that the assumption of risk referred to in the statute does not relate to such ordinary and inherent risks of employment as the employer could not avoid in the observance of its duty of care, but to those enhanced, unnecessary risks of employment due to the employer's negligence, which negligence and enhancement of risk were known to the employee. Maher v. Wagner, 62 S. D. 227, 252 N. W. 647.

Appellant contends that the findings disclose that the trial court confused non-negligence on behalf of the employer with assumption of risk on behalf of the employee, and further contends that the trial court actually based its decision of no liability upon the findings, which appellant

asserts relate to assumption of risk by the employee rather than non-negligence on behalf of the employer. It is appellant's contention that the obligation rests upon the employer to supply a safe place to work, and that the failure of defendant to have the overhead door open to make a platform upon which Voet might have performed the required work in safety constituted negligence; that the trial court by its findings above set out placed the responsibility of having a safe place to work upon the employee, Voet, and in effect held that when Voet elected to perform the work from the narrow ledge or shelf he assumed the risk of any injury resulting from such election.

The purpose of the findings about which appellant complains is not clear. If the court by such findings intended to place the responsibility of having a safe place to work upon the employee, we are of the opinion that this was error. The rule is well established that an employer must, as far as practicable, furnish a reasonably safe place to an employee to do the work for which he is employed. The rule is stated in 35 Am. Jur., Master and Servant, § 183, as follows:

"Although opposition to the doctrine has been expressed in some of the decisions, the authorities generally have held that an employer owes to his employees a duty to make safe the place where they are required to perform their services; failure therein renders the employer liable to an employee who may have sustained injuries as the proximate result of his neglect."

And in § 188 of the same work it is stated:

"Liability on the part of the employer for injury incurred by an employee in the course of his employment is predicable of a failure on the employer's part to furnish for the use of the employee injured an instrumentality such as a scaffold, where the employer ought to have anticipated that the calamity would result from the employee's working without the appliance."

Following the general rule it was held in Smith v. Ritch et al., 196 N. C. 72, 144 S. E. 537, 59 A. L. R. 1084, that where a foreman directed an employee to work from a window, rather than build a scaffold upon which to work, and the employee was injured by a glancing nail, resulting from the

precarious method of doing the work, that the injury might reasonably have been anticipated and that the employer was liable.

So in this case, we are convinced that if the defendant failed in its duty to provide Voet a reasonably safe place to perform the work for which he was employed, and the injuries Voet sustained were the proximate result of this failure of duty, liability resulted. By performing the work in a place, other than a place of reasonable safety which it was the duty of the defendant to provide, should it be found that the defendant failed in this duty, it would perhaps be held, were it not for SDC 64.0109, that Voet assumed the risk of performing the work in such manner, but under the statute, this being a risk which the defendant could have avoided in the observance of its duty of care, the defendant is deprived of such defense.

If, from the findings above set out, the trial court determined that the defendant did in fact furnish Voet places to do the work other than the narrow ledge and that Voet did not avail himself of the places offered, it is our opinion that the undisputed evidence will not warrant such determination. The work was being performed by Voet in the presence of and with the assistance of the assistant manager of the defendant company. The defendant was therefore advised and must be held to have concurred in the performance of the work from this ledge. Under this record we believe this ledge or shelf was the place furnished to perform the work. It was the place selected at least with the acquiescence and knowledge of the assistant manager, who was there actively participating in the work, and who suggested or offered nothing different. As stated above, the obligation was not upon Voet to provide a safe place, this obligation was upon the defendant. When the defendant, through its assistant manager, participated in the work on this ledge and neither provided nor offered any other place to perform the work, we are of the view, that such place must be held to be the place the defendant provided.

The appellant presented her case upon the basis that under the duty resting upon the defendant to provide a safe place for Voet to perform the work, the defendant was

negligent, under all the facts disclosed by the record, in providing the narrow ledge or shelf for the performance of the work, and that this alleged negligence was the proximate cause of the injuries Voet sustained. The facts upon the issues thus presented are undisputed; it is only the conclusions that might be drawn from such facts that have given us concern. When the evidence is without conflict and such that reasonable men must draw the same conclusions, the question of negligence is for the court. Is the undisputed evidence such in this case that it permits but one reasonable conclusion? We believe that it is. At the outset the trial court found, and such finding is amply sustained by the evidence, that had the door been raised it "would have constituted a shelf or platform upon which the said workman could stand or sit and perform said operation with complete safety." In other words, it was practicable for the defendant to have furnished a safe place for Voet to work. All that was required was that sufficient men were present the few minutes it would have taken to raise the door. Was the narrow ledge or shelf on which Voet worked a reasonably safe place? We think there can be but one answer to this question. This shelf, only 12 inches wide, was suspended 11 feet above the ground, with nothing between it and the ground to protect a fall, should one occur. The position of this shelf was such that the worker had to push against the tension of the winding spring, and while so pushing was leaning outward over the 11 feet of space between him and the ground. It should have been obvious to all concerned that while pushing to wind the spring the worker was off balance and that the least slip or miscalculation of the work might easily result in a fall such as occurred. We do not mean to say that had this narrow shelf been the only practicable place to perform the work, then it would have been negligence on behalf of the employer to permit or direct the work to be there performed. But such is not the fact in this case. With but very little effort and care the door could have been opened which, as found by the trial court, would have offered a place of "complete safety." Under these circumstances we are convinced that defendant was negligent in providing this narrow shelf, which considering the work

involved, was inherently dangerous. That such place was obviously and clearly a dangerous place to perform this work we believe is clearly indicated by the testimony of the manager of the defendant company wherein he answered the direct question of whether, in his opinion, it was a safe place for Voet to perform the work, as follows, "I wouldn't say it was, no." In view of this testimony and in view of that which was obvious as Voet was performing this work, we believe, that the defendant must be held to have reasonably anticipated that Mr. Voet might suffer a fall which would result in injury and harm. From what has been said above it is clear, we believe, that this precarious place from which the work was performed was the proximate cause of the fall and injuries sustained. It was because of the dangers inherent in the place from which the work was performed that the injuries were sustained. The place itself was the cause of the injuries and had it not been for the danger involved due to the place of performing the work, the injury would not have happened.

██ As stated above, the trial court determined that at the time Mr. Voet received the injuries from which he died he was an employee of the defendant within the meaning of the Workmen's Compensation Law. Respondent contends that this determination was error. On this issue the trial court found as follows: "While said Voet's employment by the defendant was for a specific purpose, to wit repairing and servicing the door involved herein, the defendant did not surrender the right to control such operations, no contract price for the entire job or rate of compensation per hour was agreed upon, no time limit for the completion of the work was specified, said Voet did not agree that he would fix the door but only that he would work to that end, and his compensation was not dependent upon the success of his work but only upon time consumed." Respondent asserts that this holding is contrary to the holdings of this court in the cases of Schlichting v. Radke, 67 S. D. 212, 291 N. W. 585, and McCarthy v. City of Murdo et al., 68 S. D. 12, 297 N. W. 790. As stated by this court, no hard and fast rule can be formulated for the determination of the relationship which will govern every case. Each case must be determined on its

own facts and circumstances, under the tests or guides established with principal emphasis upon right to control the progress of the work. In the McCarthy-City of Murdo case the facts disclosed that Mr. McCarthy was customarily engaged in an independently established trade or business, in furtherance of which he was engaged to make the pipe connections and fittings at the pump house. He made the necessary estimates, assembled the fittings and placed them together in his workshop. He employed and paid his skilled helper and assumed all control of the work. Obviously, these facts are different from those now before us. Voet was not customarily engaged in an independently established trade or business. On the contrary, he was a day laborer, with some special skill as a carpenter and cement worker. He was working alongside the assistant manager of the defendant company, who was actively participating in the work. In the Schlichting-Radke case it appeared that there were facts from which the Industrial Commissioner might and did find that the claimant had agreed as an independent operation to completely overhaul for a gross sum the tractor of the defendant. The defendant testified that he did not undertake to tell the claimant how to do the work, and in view of the fact that claimant had some special training as a mechanic which was known to defendant, we held that there was evidence to warrant the Industrial Commissioner's finding that the defendant was without the right to control the progress of the work.. Here the defendant did not agree to do the work for a gross sum; the work was being performed jointly with the assistant manager of the company. These facts, added to the fact that Voet was not engaged in an independently established trade or business, and had in the past performed the same work as an employee of the contractor, all point to his relationship with the defendant as that of an employee. The trial court, in our opinion, was justified in finding that the right to control the progress of the work was in the defendant; that Voet agreed only to work upon the door and did not contract or agree to place the door in working order as a specific job or undertaking. We find no error in the trial court's holding that Voet was an employee within the meaning of the Workmen's Compensation Law.

For the reasons given with reference to the negligence feature of the case, the judgment appealed from is reversed.

POLLEY, ROBERTS, and SMITH, JJ., concur.