HALVERSON, Respondent, v. SONOTONE CORPORATION, Appellant

(27 N. W.2d 596)

(File No. 8850. Opinion filed May 19, 1947.)

**A. J. Beck,** of Elk Point, and **Shull & Marshall,** of Sioux City, for Appellant.

**O. C. Donley,** of Elk Point, for Respondent.

RUDOLPH, J.   Following our decision on the prior appeal of this case, Halverson v. Sonotone Corporation, 70 S. D. 489, 19 N. W.2d 14, 161 A. L. R. 292, the motion to quash the service of the summons and complaint was brought on for hearing before the trial court and resulted in an order refusing to quash the service.   At the time of the hearing on the motion to quash service, the court considered an application of the plaintiff to amend the affidavit of service which application the court granted and accepted in lieu of the original affidavit of service, an amended affidavit. It is from the order refusing to quash the service of the summons and complaint that this appeal is taken.

The motion to quash the service of the summons and complaint was based upon the grounds, first, that the car operated by the defendant, Inez Blackstone, at the time of the accident, was owned by her individually and not by Sonotone Corporation; second, that at the time of the accident Inez Blackstone was not the agent of the Sonotone Corporation.

Many states have statutes such as our SDC 33.0809 providing for constructed or substituted service of

process on a nonresident in an action growing out of an automobile accident. The question here presented has been before the courts of a number of jurisdictions and under statutes in all respects similar to ours it has generally been held that service under the statute is not dependent upon ownership of the car but rather upon "use or operation by a nonresident or his agent. * * *" State v. District Court of Sixth Judicial Dist., 112 Mont. 253, 114 P.2d 1047; Skutt v. Dillavou, 234 Iowa 610, 13 N. W.2d 322, 155 A. L. R. 327; Jones v. Pebler, 371 Ill. 309, 20 N. E.2d 592, 125 A. L. R. 451; Covert v. Hastings Mfg. Co., D. C., 44 F. Supp. 773 (construing Neb. statute). Annotations 82 A. L. R. 768, 96 A. L. R. 594, 125 A. L. R. 457. Our statute, unlike the Michigan statute construed in Brown v. Cleveland Tractor Co., 265 Mich. 475, 251 N. W. 557, refers to the "use or operation by a nonresident or his agent." Nowhere in our statute is the word "owner" or "ownership" used. Had the legislature intended to restrict the effect of the statute to ownership language to express its purpose would undoubtedly have been incorporated in the statute. The purpose of the statute is, no doubt, to give persons injured by the use and operation of motor vehicles upon the highways of this state an effective means of relief against nonresidents liable for such injury. Should the injured person be compelled to seek relief in the courts of the state where personal service may be made upon the nonresident, the cost of such relief would in many instances be prohibitive. This purpose would be in part thwarted should we limit the application of the statute to nonresident owners. We are of the opinion that under our statute, ownership is not material. The decisive issue, so far as this case is concerned, is whether at the time plaintiff was injured by the car operated by Inez Blackstone she was an agent of Sonotone and engaged as such.

On the question of agency there was before the trial court on this motion the transcript of the testimony taken at the trial referred to in our prior opinion. No proof other than this transcript was offered. We deem the following facts established by this record. Sonotone is a world wide organization dealing in hearing aids and hearing service. It maintains offices in many cities throughout the nation in-

cluding Sioux City, Iowa, and maintains its home office in New York. The office at Sioux City is under the control and management of a Mr. Richter who testified that he is the "district manager for Sonotone at the Sioux City office." This office is in charge of certain allotted territory including Union County, S. D., the county in which the accident occurred. Mrs. Blaskstone was employed by Mr. Richter to sell Sonotone products throughout the territory. Before engaging upon her duties it was required that Mrs. Blackstone take a rather comprehensive training course. Sonotone furnished all forms and sales literature, fixed the price of its product, and required that it approve all conditional sales contracts. The conditional sales contract furnished by the company specifically provides that the agreement is between "Sonotone Corporation, Seller" and the buyer; it further provides that title to the property purchased shall remain in the "Seller" until the purchase price in full has been paid. Mrs. Blackstone was hired for no specific time but was subject to discharge at any time, she was paid on a commission basis, drove her own car, paid her own expenses, and from the commissions she earned Sonotone made deductions under the Social Security Act. 42 U. S. C. A, § 301 et seq. Mrs. Blackstone solicited sales in the territory assigned to her during the week and reported at the Sioux City office each week.

The above facts pose a rather typical case involving the question of whether a salesman is an independent contractor or whether the relationship between the company represented and the salesman is that of master and servant or principal and agent. This question has been before the courts of many jurisdictions, and while each apparently applies the same test to determine the relationship, the results reached are not in accord. Without attempting to cite all of the many cases where the question has been presented, we cite the following for the purpose of showing the different results reached in similar cases. Holding that the relationship is that of master and servant are the following: Pickens & Plummer v. Diecker & Brother, 21 Ohio St. 212, 8 Am. Rep. 55; Singer Mfg. Co. v. Rahn, 132 U. S. 518, 10 S. Ct. 175, 33 L. Ed 440; Lewis v. National Cash Regis-

ter Co., 84 N. J. L. 598, 87 A. 345; Aisenberg v. C. F. Adams Co., 95 Conn. 419, 111 A. 591; United States Fidelity & Guaranty Co. v. Lowry, Tex. Civ. App., 231 S. W. 818; Dishman v. Whitney, 121 Wash. 157, 209 P. 12, 29 A. L. R. 460; Dunbaden v. Castles Ice Cream Co., 103 N. J. L. 427, 135 A. 886; Hiner v. Olson et al., 23 Cal. App. 2d 227, 72 P.2d 890, 73 P.2d 945; Baldwin v. Singer Sewing Machine Co., 49 Idaho 231, 287 P. 944; Wilson v. Times Printing Co., 158 Wash. 95, 290. P. 691.

Holding contrary are the following: Aldrich v. Tyler Grocery Co., 206 Ala. 138, 89 So. 289, 17 A. L. R. 617; Dohner v. Winfield Wholesale Grocery Co., 116 Kan. 237, 226 P. 767; Stover Bedding Co. v. Industrial Commission et al., 99 Utah 423, 107 P.2d 1027, 134 A. L. R. 1006; Kruse v. Weigand et al., 204 Wis. 195, 235 N. W. 426.

■ The test generally used is the control test. This court has consistently used the control test for the purpose of determining the relationship. In the case of Cockran v. Rice, 26 S. D. 393, 128 N. W. 583, 585, Ann. Cas. 1913B, 570, it was said: "A test of the relationship between the employer and the employee is the right of the employer under the contract to control the manner and continuance of the particular service and the final result. No single fact is more conclusive as to the effect of the contract of employment, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself." See also Biggins v. Wagner, 60 S. D. 581, 245 N. W. 385, 85 A. L. R. 776; Schlichting v. Radke et al., 67 S. D. 212, 291 N. W. 585; McCarthy v. City of Murdo et al., 68 S. D. 12, 297 N. W. 790; Bandt v. Farmer's Co-op Elevator Co. of Revillo et al., 69 S. D. 17, 5. N. W.2d 897; Voet v. Lampert Lumber Co., 70 S. D. 142, 15 N. W.2d 579, 584.

It should be noted also that throughout the South Dakota cases emphasis is laid on the question of whether the service being performed is an "independent calling." In the Voet v. Lampert-Lumber Co. case, we said:

"These facts, added to the facts that Voet was not engaged in an independently established trade or business * * * all point to his relationship * * *."

In the Bandt case [69 S. D. 17, 5 N. W.2d 898] we said: "We find nothing * * * which supports * * * a contract * * * to move this car as an independent operation."

In the McCarthy case [68 S. D. 12, 297 N. W. 791] we said: "* * *. McCarthy was performing an independent calling."

In the Schlichting case [67 S. D. 212, 291 N. W. 587] we said the evidence was sufficient to establish that the work was "an independent operation and something which required a special skill * * *."

In the instant case we do not believe it can be said that Mrs. Blackstone was engaged in an independent calling. She was only a part and element of the business of Sonotone, and was engaged in the pursuit of the business of that company and not of some independent business or calling of her own. She had been given a rather comprehensive course of instruction by the company of the manner and method in which to conduct, not her business, but the company's business.

Who was in control of the "manner and continuance of the particular service and the final result" for which Mrs. Blackstone was employed? It is contended that because Mrs. Blackstone was assigned a certain territory with the liberty to go anywhere in this territory indicates that Mrs. Blackstone was in control. But this freedom does not indicate to us that the company released its control over the manner and continuance of her service, in any different sense that it releases its control over other employees by giving them certain freedom of action. It seems to us that the company from the very outset of its relationship with Mrs. Blackstone assumed control of the whole situation. It instructed her in the company methods which instructions she was, of course, expected to follow; it fixed the price of the goods she was to sell, which goods belonged to the company and not to her; it supplied the literature relating to its product and the necessary papers and forms to complete a sale, and required their use; it controlled all credit sales, and as an essential to such sales required that all credit contracts have company approval; it refused to hire Mrs. Blackstone for any specific time or to complete any

particular task; and finally the company remained in complete control of the manner and continuance of her entire service by retaining the right to discharge her at any time. As we said in the case of Cockran v. Rice, supra, "No single fact is more conclusive as to the effect of the contract of employment, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself." While it is perhaps not too important, we believe the fact that social security taxes were deducted from the earnings of Mrs. Blackstone is significant. This fact indicates that the parties believe the relationship of master and servant existed for it is only on the basis of that relationship that such taxes are paid. Metcalf v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384. In view of the above control assumed by the company and the fact that Mrs. Blackstone was not engaged in an independent calling, we do not believe that the fact that Mrs. Blackstone was given the liberty to travel her assigned territory generally as she elected, should classify her as an independent contractor, rather than the agent of Sonotone.

We have considered the testimony and we are convinced that the trial court correctly ruled that at the time of the accident Mrs. Blackstone was in the performance of her duties as the agent of Sonotone.

■ We have also considered the amended affidavit of service and find it sets forth the statutory requirements of the substituted service therein provided. Since it is the fact of service rather than the affidavit which gives the court jurisdiction, we are satisfied that the court did not err in accepting the amended affidavit. Shenandoah National Bank v. Reininger, 58 S. D. 568, 237 N. W. 765.

■ We find no merit in appellant's contention that our prior decision was a final adjudication of the questions raised by the motion to quash. That decision simply held that Sonotone was entitled to a ruling on the motion before being required to proceed with the trial on the merits, and the judgment was reversed to provide Sonotone the privilege to which we held it entitled.

The order appealed from is affirmed.

All the Judges concur, except POLLEY, J., not sitting.