Dennis EGEMO and St. Paul Fire &
Marine Insurance Company,
Employer and Insurer, Appellants,

v.

Jose FLORES, Claimant and Appellee.

No. 17163.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1991.

Decided May 15, 1991.

Richard O. Sharpe of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for employer and insurer, appellants.

William Jason Groves, Rapid City, for claimant and appellee.

HERTZ, Acting Justice.

Dennis Egemo (Egemo) and St. Paul Fire & Marine Insurance Company appeal from a decision of the circuit court affirming the decision of the Department of Labor, Division of Labor and Management, Worker's Compensation Division (Department) holding that Jose Flores (Flores) is an employee for the purposes of the Worker's Compensation Act. On appeal, Egemo contends that Flores was actually an independent contractor, not an employee, and that Department and circuit court erred by considering the purpose of the worker's compensation statutes in reaching their decisions. We reverse and remand.

## FACTS

Egemo is a logging contractor working in the Black Hills National Forest. For the four years prior to the hearing in this matter, Egemo had an exclusive contract with Continental Lumber for the purchase of logs which were to be obtained from trees Egemo harvested from certain United States Forest Service land in the Black Hills. To perform this contract, Egemo hired individuals to harvest the trees and produce the logs to be sold to Continental Lumber. As is the custom in the Black Hills Forest, the cutters hired to cut the trees were hired as independent contractors. Egemo required that each of his cutters sign an agreement entitled "Independent Contractor Agreement," providing that persons assuming the duties of cutters, such as Flores, were hired strictly as independent contractors. In fact, all the individuals Egemo hired to complete his contract with Continental Lumber, such as cutters, truckers, skidders, buckers, stackers, and slashers, were hired using the same "Independent Contractor Agreement." Flores was paid by the ton of timber cut. In paying such individuals for their work, Egemo did not withhold income tax or social security tax, nor did he pay any unemployment insurance. At the end of the year, each individual's earnings were reported to the Internal Revenue Service on a Form 1099 as non-employee compensation.

The duties of a cutter require that each individual cutter provide his or her own chain saw, gas, oil, fire extinguisher, shovel, and safety equipment, and that each cutter maintain his or her own equipment. When the cutters began work on a new sale of forest service timber, the land in question would be divided into patches. Each cutter was assigned an initial patch by drawing lots from a hat, and would then work in that patch until all the designated timber was cut. After completing the first patch, Egemo would assign the next patch to each cutter based on the relative difficulty of each patch, in an attempt to equalize the luck of the draw. As each cutter worked in their respective patch, they were free to come and go as they pleased. Ege-

mo did not direct the hours of the day that each cutter was to work, nor when they were to take breaks, or even when they could take days off. Egemo did not directly supervise any of the work performed by the cutters. The only requirement imposed on any of the cutters was to cut logs according to the specifications of the Forest Service and that of the contract with Continental Lumber.

In October, 1986, Flores came to the Black Hills of South Dakota where his brother Enrique had arranged work for him with Egemo. Enrique trained Flores to cut trees, and thereafter Flores worked by himself for Egemo. Flores worked for Egemo from October, 1986, to March, 1987, and then again resumed his employment with Egemo in October, 1987. Egemo testified that in accordance with his custom, he had Flores sign an agreement entitled "Independent Contractor Agreement," providing that cutters were hired as independent contractors. Egemo was unable to produce the independent contractor agreement signed by Flores. Although he denied having signed such an agreement, Flores testified that if he were given such an agreement he would have signed it. As an independent contractor, Egemo informed Flores that he was not covered by worker's compensation insurance. However, Egemo's contract with Continental Lumber required him to obtain a worker's compensation policy. Egemo obtained such a policy, but he was never charged, and did not pay, a premium because each of the people working for him was an independent contractor. At the hearing, Egemo testified that it was his intent to create an independent contractor/contractee relationship. Flores, however, testified that his goal was simply to earn a living. As a Mexican immigrant, Flores had less than a full command of the English language. Flores claimed that he could not read or write English, however, Department found there was testimony that he was better able to speak and understand the English language than he indicated.

On June 3, 1988, Flores was injured when cutting down a tree. The injury resulted when the tree he had just cut down started to fall, he stepped out of the way, and then stepped on a fallen log and fell, hurting his left leg and back. Flores then brought a claim for worker's compensation benefits before Department. By stipulation of the parties, the hearing before Department was limited to the issue of whether Flores was an employee or an independent contractor. Department conducted its hearing on February 10, 1989, and determined that Flores was an employee of Egemo. Findings of fact and conclusions of law were entered on May 2, 1989. Both parties then appealed Department's decision to the circuit court. The circuit court affirmed Department's decision, entering its findings of fact and conclusions of law on March 26, 1990. From this decision, Egemo appeals.

### ISSUES

1. Did Department and the circuit court err in ruling that Flores was an employee at the time of his injury?

2. Did Department and the circuit court err in considering the purpose of the worker's compensation laws in their decisions?

### ANALYSIS

*1. Employment Status.*

██ There is some dispute over the standard by which we review the determination that Flores was an employee at the time of his injury. In *Permann v. Department of Labor, Unemployment Insurance Division*, 411 N.W.2d 113 (S.D.1987), this court articulated the standard by which worker's compensation appeals are reviewed. When presented with a question of fact, this court must determine whether the agency's findings are clearly erroneous. *Id.* at 116–17. Further, "the question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding.... [T]he court shall give great weight to findings made and inferences drawn by an agency on questions of fact." *Schlenker v. Boyd's Drug Mart*, 458 N.W.2d 368, 371 (S.D.1990)

(Henderson, J. concurring in result) (quoting *Lawler v. Windmill Restaurant*, 435 N.W.2d 708, 711 (S.D.1989) (Morgan, J., concurring specially) (Henderson, J., dissenting)). When the issue presented is a question of law, however, the decisions of the administrative agency and the circuit court are fully reviewable. *Schlenker*, 458 N.W.2d at 370; *Permann*, 411 N.W.2d at 117. Likewise, mixed questions of fact and law which require the application of a legal standard are fully reviewable. *In re Groseth Int'l*, 442 N.W.2d 229, 232 (S.D.1989) (Sabers, J., concurring in part and concurring specially in part); *South Dakota Stockgrowers Ass'n v. Holloway*, 438 N.W.2d 561, 563 (S.D.1989); *Permann*, 411 N.W.2d at 119.

The uncertainty over the proper standard of review results from conflicting language in two cases. In *Dumire v. Martin*, 84 S.D. 572, 577, 174 N.W.2d 215, 218 (1970), we stated: "The question of whether Dumire was an employee or an independent contractor was for the commissioner to determine under all the evidence and the inferences to be drawn therefrom. This determination we are bound to accept if there is any reasonable and substantial evidence to support it." However, in *Steen v. Potts*, 75 S.D. 184, 189, 61 N.W.2d 825, 828 (1953), we stated otherwise: "[T]he ruling determining the nature of the relation [is] a question of law[.]" In its memorandum decision which was incorporated into the findings of fact and conclusions of law, Department observed that it was bound by our decision in *Dumire*, noting that "[t]he question is for the trier of fact to determine under all of the evidence and inferences to be drawn therefrom." However, the circuit court considered the matter to be a question of law, based on *Anton v. Industrial Commission of Arizona*, 141 Ariz. 566, 688 P.2d 192 (App.1984). *See Steen*, 75 S.D. at 189, 61 N.W.2d at 828; *Higgins v. Monroe Evening News*, 404 Mich. 1, 272 N.W.2d 537 (1978); *Pribyl v. Standard Elec. Co.*, 246 Iowa 333, 67 N.W.2d 438 (1955).

■ The previous decisions of this court make it clear that the determination of whether one is an independent contractor or an employee is arrived at by the application of a legal test to an established set of facts. *Dumire*, 84 S.D. at 576, 174 N.W.2d at 217; *Steen*, 75 S.D. at 187–88, 61 N.W.2d at 826–27. Our review requires that we determine whether the facts established by Department satisfy the legal standard applicable to resolve disputes over whether an individual is an employee or independent contractor. Accordingly, we hold that the ultimate determination of whether an individual is an employee or an independent contractor is a mixed question of law and fact fully reviewable by this court. *See Appeal of Hendrickson's Health Care Service*, 462 N.W.2d 655, 658 (S.D.1990) (Henderson, J., concurring in part and dissenting in part); *Permann*, 411 N.W.2d at 119. With this standard in mind, we turn to the merits of this issue.

■ We have considered the distinctions between employee and independent contractor on a number of occasions, and in a variety of circumstances. *See, e.g., Hendrickson's Health Care*, 462 N.W.2d at 655 (unemployment insurance tax liability); *Dumire*, 84 S.D. 572, 174 N.W.2d 215 (worker's compensation benefits); *Steen*, 75 S.D. 184, 61 N.W.2d 825 (action by building contractor to recover for labor and materials); *Cockran v. Rice*, 26 S.D. 393, 128 N.W. 583 (1910) (third party liability in tort). The legislature has also addressed the distinctions between employee and independent contractor. *See* SDCL 61–1–11; SDCL 62–1–3. In determining whether an individual is an employee or an independent contractor, each case must be determined on its own facts and all the features of the relationship are to be considered. *Dumire*, 84 S.D. at 575, 174 N.W.2d at 216–17; *Steen*, 75 S.D. at 186, 61 N.W.2d at 826.

In our several decisions on this issue, we have cataloged many factors which are to be considered in determining the nature of an employment relationship. *See, e.g., Hendrickson's Health Care*, 462 N.W.2d 655; *Dumire*, 84 S.D. 572, 174 N.W.2d 215; *Steen*, 75 S.D. 184, 61 N.W.2d 825; *James v. McDonald*, 73 S.D. 78, 39 N.W.2d 478 (1949); *Halverson v. Sonotone Corp.*, 71

S.D. 568, 27 N.W.2d 596 (1947); *Voet v. Lampert Lumber Co.*, 70 S.D. 142, 15 N.W.2d 579 (1944); *Schlichting v. Radke*, 67 S.D. 212, 291 N.W. 585 (1940); *Baer v. Armour & Co.*, 63 S.D. 299, 258 N.W. 135 (1934); *Cockran*, 26 S.D. 393, 128 N.W. 583.

 Our most recent decision on the distinction between independent contractor and employee is *Hendrickson's Health Care*, 462 N.W.2d 655. There we focused on two primary factors to test whether an individual is an independent contractor. Those tests are: "(1) Whether the individual[ ] [has] been and will continue to be free from control or direction over the performance of the[ ] services, both under contract of service and in fact," and "(2) Whether the individual [is] customarily engaged in an independently established trade, occupation, profession or business." 462 N.W.2d at 658, 659. These two factors, together with any other facts particularly probative of the nature of the employment relationship at issue, form the basis of our inquiry.

(A) Right of Control.

 In evaluating the "right of control test," important considerations include direct evidence of the right of control, the method of payment, furnishing major items of equipment, and the right to terminate the employment relationship at will and without liability. *Sines v. Sines*, 110 Idaho 776, 777, 718 P.2d 1214, 1215 (1986). *See Hendrickson's Health Care, supra; Dumire, supra; Steen, supra.* The only evidence that Egemo directly controlled Flores' activities as a cutter was that (1) after cutters cleared their first patch, "Egemo assigned subsequent patches to equalize the luck of the draw," and that (2) "cutters were required by Egemo to comply with the terms of his agreement with the mill and the sale requirements." Egemo exercised no control or supervision over the method or manner in which cutters such as Flores completed their tasks. Egemo did not direct the hours of work, breaks, or even the days off. In comparison, the care providers in *Hendrickson's Health Care* were subjected to a list of requirements and restrictions to be followed in completion of their duties, and failure to follow those rules was a basis for dismissal. 462 N.W.2d at 658–59. Such a degree of control by employer is absent here.

Department found that as a logger, Egemo's business required that he coordinate the efforts of many different individuals to deliver logs to the mill for processing. Department also found that "[i]n order for Egemo to complete his contract with the mill, he was required to control the overall project. [Flores] was required to do his part to accomplish a coordinated effort." There were no specific facts established by Department to reveal how Egemo's coordination of the several workers deprived Flores of independent control over the performance of his duties. We are aware that our statutory scheme presumes an individual to be an employee until status as an independent contractor is established. SDCL 61–1–11; SDCL 62–1–3. However, given Department's findings that Egemo did not control the daily hours or performance of the job, a mere general finding that the employer exercises control over the project by coordinating the duties necessary for its completion does not establish control dispositive of an employer/employee relationship.

Flores was hired to cut timber and was paid by the ton of timber he cut. When Egemo paid Flores, he did not withhold any amounts for income tax, social security, or unemployment insurance. Egemo reported Flores' year-end income to the Internal Revenue Service on a Form 1099 as non-employee compensation. In Department's memorandum decision, which was specifically incorporated into its findings of fact, it noted that these facts are "indicative of an independent contractor/contractee relationship." We agree. *See Dumire*, 84 S.D. at 577, 174 N.W.2d at 217.

Another indicator of the right of control is the furnishing of major items of equipment. Department found that Flores supplied the equipment needed to perform his duties as a cutter, including safety equipment and maintenance. In fact, Egemo did

not supply any tools to Flores or to other cutters. Department attempted to minimize this factor, however, finding that the tools Flores required "were not as extensive as in the case of one having their own business." In relation to the right to control, the number of tools a worker provides is irrelevant; the significance is found in the fact that Flores was required to supply all of his own tools, including a chain saw, files, hard hat, gasoline, oil, shovel, and fire extinguisher, and also provided his own maintenance and his transportation to the remote work sites. This is evidence that Egemo lacked the control generally associated with the employer/employee relationship.

The other indicator of control is whether the employment relationship can be terminated at will and without liability. *See Hendrickson's Health Care*, 462 N.W.2d at 659; *Steen*, 75 S.D. at 192–93, 194, 61 N.W.2d at 827, 830; *Cockran*, 26 S.D. at 397, 128 N.W. at 585. Department's findings in this regard are equivocal. In its memorandum opinion, Department found that "the claimant testified that he believed Egemo to be the boss, and he believed that Egemo had the authority to fire him. Egemo testified that he was bound by a contract, and if that contract were not adhered to, he (Egemo) could be sued for breach of contract." However, in Finding XV., Department found that "if [cutters] did not keep their work moving so as to be synchronized with the rest of Egemo's operation they would be replaced by Egemo." On this record, it appears that the employment relationship could be terminated but might give rise to liability for breach of contract. Thus, this evidence is not probative of the right of control in this case.

Based on the foregoing discussion, we cannot agree with Department's conclusion that Egemo had the right to or, in fact, exercised control over the employment relationship. The facts as found by Department indicate that the extent of Egemo's control over the cutters was limited to coordinating the efforts of the workers and insuring that the final product complied with the requirements of the Forest Service and Continental Lumber. Egemo ex-ercised no control over the details of the performance of the work by Flores, paid him as an independent contractor, and did not supply any tools required for the performance of the duties of a cutter. These facts are indicative of an independent contractor/contractee relationship.

(B) Independently Established Trade.

The significant considerations in the test of "independently established trade" were set out fully in *Hendrickson's Health Care*.

> The requirement that the employee's occupation be independently established and that he [or she] be customarily engaged in it calls for an enterprise created and existing separate and apart from the relationship with the particular employer; an enterprise that will survive the termination of that relationship. The individual must have a proprietary interest in the enterprise to the extent that she [or he] can operate it without hinderance from any other individual.

> . . . . .

> However, it is not skill alone which determines whether an individual is established in a trade or business, but whether that individual by reason of such skill engages herself [or himself] in an economic enterprise such that she [or he] bears the risk of her [or his] own unemployment. Whether or not she [or he] is unemployed is solely a function of market forces and the demand for her [or his] skills, not the response of her [or his] master to similar economic realities.

462 N.W.2d at 659 (citations omitted). Although our decision in *Hendrickson's Health Care* was made subsequent to Department's decision herein, we apply this test because it accurately clarifies our previous decisions emphasizing the significance of whether the worker is engaged in a distinct occupation or business. *See Steen*, 75 S.D. at 192–93, 194, 61 N.W.2d at 827, 830; *Cockran*, 26 S.D. at 396–97, 128 N.W. at 585.

■ Department determined in Finding XXV. that Flores was "not engaged in a

distinct and independent business." This was based on the following findings:

## XXII.

Claimant's business did not require an investment other than his chain saw, files, shovel, fire extinguisher, hard hat, gas, and oil.

## XXIII.

Although Claimant may have worked for other loggers, he worked only for Egemo.

## XXIV.

Claimant's freedom to work for another logger was similar to any employee changing jobs.

. . . . .

## XXVI.

Claimant learned his skill by on the job training as is true of many employer/employee relationships.

## XXVII.

The tools supplied by Claimant were not as extensive as in the case of one having their own business.

## XXVIII.

Claimant did not have employees of his own.

## XXIX.

Claimant's relationship with Egemo was continuous with the only interruption being if Egemo was unable to provide more work.

## XXX.

Claimant devoted his full time to Employer's business.

Department focused on whether Flores' work as a cutter "could be equated with that of a professional, *e.g.*, physician, attorney, engineer, etc., or with one having a distinct business and crew of his own." We have never required that an individual be engaged in a profession requiring extensive education to be an independent contractor.

To begin, Department's finding that Flores' business did not require an investment is clearly erroneous as Department found that he had to supply his own chain saw, oil, gas, files, safety equipment and maintenance. These items do constitute an investment which is not insubstantial. The financial investment or physical equipment are not dispositive as we have held that one may possess a proprietary interest in their skills as a salesperson sufficient to satisfy the independent contractor definition. *See Department of Labor, Unemployment Ins. Div. v. Tri State Ins. Co.*, 315 N.W.2d 315, 317–18 (S.D.1982). Department did find that Flores, "as a cutter, was required to have a considerable amount of skill," but minimized the significance of this by finding that the skill was acquired through on-the-job training, and did not require a long period of preparation.

Although Department found that Flores was not engaged in a distinct business, it found that it was Egemo's custom, as was the custom in the Black Hills region, to treat all cutters as independent contractors. The record reveals that when Egemo no longer had work available, Flores went out on his own to find work in Idaho. Other cutters who worked for Egemo testified that they had worked for other loggers in the Black Hills and were treated by Egemo and other loggers as independent contractors. It was Flores who, by virtue of his established trade as a cutter, did bear the risk of his own unemployment. Although Flores had regularly worked for Egemo, there is no evidence that he sought unemployment benefits against Egemo when a new contract was not extended to him in 1987. In fact, Flores' trade as a cutter could exist separate and apart from Egemo and can survive the termination of his work relationship with Egemo. Flores had a proprietary interest in his skill as a cutter, and in his equipment, to the extent that he could and did operate without hindrance from any other individual. Based on these facts, Flores was engaged in an

independently established trade such that he was an independent contractor at the time of his injury. *See Hendrickson's Health Care*, 462 N.W.2d at 659.

### (C) Other Factors.

Under the circumstances of this case, two other significant factors are the intent of the parties in entering into the employment relationship and the custom of the community to treat cutters as independent contractors. *See Steen*, 75 S.D. at 188–89, 61 N.W.2d at 827. Department found:

> There was testimony, that at the time of going to work for the Employer, a contract was signed. A form of this contract was admitted into evidence as Employer/Insurer Exhibit 1. No contract for the Claimant was introduced, and it was testified that none could be found. It was testified to, however, that one had been signed, and that it was customary for all workers to sign an agreement on this form. The Claimant testified that if given an agreement to sign, he would have signed it. The form of the agreement is entitled "Independent Contractor Agreement," and provides that the Employer herein, Dennis Egemo, is the "logger," and the person being hired is an "independent contractor."

Egemo informed each individual that they were not covered by worker's compensation insurance and that they were independent contractors. Egemo testified unequivocally that it was his intent to establish an independent contractor/contractee relationship. Furthermore, Flores' relatives and others working as cutters for Egemo were treated as independent contractors. Department also found that Flores was willing to enter into whatever relationship was necessary to secure a job, and his goal was simply to earn a living. Department did not find that it was Flores' intention to create an employee/employer relationship, or that he intended to create an independent contractor/contractee relationship. The evidence that Egemo intended to hire Flores as an independent contractor was undisputed, as was the testimony that Flores was told he was not covered by worker's compensation insurance because

he, as all cutters, was an independent contractor. This being a mixed question of law and fact, we determine that Department and the circuit court improperly applied the legal standard to the facts of this case to determine whether an individual is an independent contractor or an employee. On the basis of the factual and legal errors, we reverse.

### 2. Purpose of Worker's Compensation.

Egemo also argues that Department and the circuit court abused their discretion in considering the purpose of worker's compensation in deciding that Flores was an employee at the time of his injury, and in failing to follow a prior Department decision. Flores responds that it is a longstanding rule that our worker's compensation laws are remedial in character and entitled to a liberal construction. *See Kennedy v. Hubbard Milling Co.*, 465 N.W.2d 792, 797 (S.D.1991) (Henderson, J., dissenting); *Lawler v. Windmill Restaurant*, 435 N.W.2d 708, 709 (S.D.1989). In its memorandum decision, Department undertook a lengthy analysis of the social necessity of worker's compensation, and the ability of the worker's compensation system to pass on to the public the costs of compensating an injured individual. Flores contends that when the question of employment status is a close one, public policy demands that the question be resolved in favor of compensation. *See Keil v. Nelson*, 355 N.W.2d 525 (S.D.1984).

The purpose of our worker's compensation laws are not in dispute; they are intended to compensate injured employees. "[The] rule of liberal construction, however, applies only to the law and not to the evidence offered to support a claim." *Lawler*, 435 N.W.2d at 709 (citations omitted). In reaching its decision, Department liberally construed the *facts* to reach its conclusion that Flores was an employee at the time of his injury. It did so by liberally construing the tests necessary to establish an employer/employee relationship. Department's conclusion that Flores was working in the usual course of Egemo's logging business was not supported by the

fact that Egemo simply coordinated harvesting of timber. The liberal construction of facts is further evidenced by Department's finding that Flores supplied all his own tools, but that this was not indicative of an independent contractor because the tools "were not as extensive as in the case of one having their own business," and did not require a substantial investment. These considerations are not relevant to our firmly established rule that who supplies major tools and equipment is evidence of who controls the employment relationship. Department's desire to compensate Flores, and to empathize with his position is irrelevant to the initial determination of whether he can claim the statutory benefits due an injured employee. Facts cannot be liberally construed to entitle an injured worker to compensation if he or she is not first an employee. *See Id.*

■ Finally, Egemo argues that Department was required to follow its prior decision in a case with similar facts in which Department held that a cutter was an independent contractor. We have often stated that each case must be decided on its own facts, and in *Schlenker* we addressed the precedential value of Department's own unreviewed decisions. 458 N.W.2d at 372. We are not bound by Department's own administrative decisions. *Id.* The decisions of this court are authoritatively binding on Department, and it is only by disregarding the settled law that Department will be found to have abused its discretion in refusing to follow its prior administrative rulings.

## DECISION

The decisions of Department and the circuit court are reversed and this case is remanded for proceedings consistent with this opinion.

MILLER, C.J., and HENDERSON and WUEST, JJ., concur.

SABERS, Justice, dissents.

AMUNDSON, J., *not having been a member of the Court at the time this case was considered, did not participate.*

SABERS, Justice (dissenting).

I dissent.

The majority overrules the circuit court, the Department of Labor and common sense to endorse the legal fiction that an immigrant woodcutter unable to read English is an "independent contractor" ineligible for worker's compensation. The reasoning behind this result misses "the forest for the trees." It places too much emphasis on some facts, ignores other facts and generally fails to perceive the pattern which emerges when all relevant facts are viewed in perspective.

It is clear that a worker who punches a clock every morning at a factory is an employee of the factory. It is equally clear that a worker who comes to the same factory twice a year to repair the plumbing is an independent contractor. The problem is that many workplace arrangements, including the one in this case, do not conform perfectly to either of these two models, but fall somewhere in between, sharing some characteristics of each.

In marginal cases, as we acknowledged in *Dumire v. Martin*, 84 S.D. 572, 174 N.W.2d 215, 217 (1970), there is no "hard and fast rule" or bright line for separating sheep from goats. Instead, the court must determine on a case-by-case basis which employment category more closely fits the facts considering the totality of relevant circumstances. 174 N.W.2d at 216–17; *Steen v. Potts*, 75 S.D. 184, 61 N.W.2d 825, 826–27 (1953). The majority opinion correctly notes that several South Dakota cases have generated various lists of relevant factors to be considered. *See e.g., Appeal of Hendrickson's Health Care Service*, 462 N.W.2d 655, 658–59 (S.D.1990) (opinion by Wuest, J., holding that nurses and nurse's aides who provided in-home health care to business clients were employees of the business, not independent contractors); *Dumire; Steen; Schlichting v. Radke*, 67 S.D. 212, 291 N.W. 585, 586 (1940); *Cockran v. Rice*, 26 S.D. 393, 128 N.W. 583, 585 (1910). It is less important to come up with the "right" list of factors than to understand the fundamental pur-

pose of the inquiry: to determine the real underlying economic relationship between the parties, irrespective of what either party chooses to call it.

In doing so, the court should not be naive about the economic facts of life. An employer's superior bargaining position may enable him to deceptively structure an employment relationship to his own tax or liability advantage, and the worker may be in no position to object—even if he understands what the employer is doing or that it is not in the worker's best interest.

In this case, Flores was a cutter working with other cutters on parcels of forest service land in a manner coordinated and controlled by Egemo, according to standards set by Egemo, at a piece rate determined by Egemo, in pursuit of the logging business owned by Egemo. Flores established no "cutting business" in the Black Hills before or after working for Egemo. He had no other "customers" while he worked for Egemo. The record does not reveal that he sought other customers or that he even had a sales tax license. All of these considerations establish that Flores lacked the "free[dom] from control" and the "independently established trade" associated with independent contractors. *Hendrickson's Health Care*, 462 N.W.2d at 658.

Egemo's own brief frequently lapses into calling Flores and the other cutters "his workers." There is no mention of "his independent contractors." This is an admission against interest—that Egemo does not believe his own fiction.

The majority opinion grasps at many straws. For example, it makes much of the fact that Flores supplied his own chain saw and other equipment and the fact that Egemo withheld no taxes from the money he paid Flores. This fails to take into account that requiring workers to use their own tools and paying them in tax-free dollars are practices which are not only in the *employer's* control but which actually simplify the employer's business. Therefore, reliance on such factors to conclude anything about the *worker's* degree of independence and control is hazardous at best. Moreover, even if lack of tax withholding

from Flores' piece rate paycheck was "indicative of an independent contractor/contractee relationship," the fact that Flores was paid by piece rate in the first place, rather than by "an entire contract for a gross sum," was indicative of an employer/employee relationship. *Schlichting v. Radke*, 291 N.W. at 586; *Cockran v. Rice*, 128 N.W. at 585. The majority opinion also emphasizes Flores' freedom to determine his own work schedule. It does not stop to consider how little this proves given that Flores was paid for his productivity, not his time. *See Halverson v. Sonotone Corp.*, 71 S.D. 568, 27 N.W.2d 596, 598–599 (1947).

The bottom line is that the majority opinion misapplies the test, which is whether employer retained the right to exercise "control or direction over the performance of [claimant's] services[.]" *Hendrickson's Health Care*, 462 N.W.2d at 658. Under this test as applied to any fair reading of these facts, Flores was an employee, not an independent contractor, because Egemo retained the right to exercise control over the progress of Flores' work. The so-called "Independent Contractor Agreement" was no obstacle to Egemo's control since he could always claim breach of contract and exclude Flores from the job site.

In fact, several of the key factors relied upon by the majority to demonstrate independent contractor status indicate that Egemo was playing fast and loose with tax and labor laws. If this independent contractor fiction really is the "custom" in the entire logging industry, it raises disturbing questions which go beyond the scope of this case and perhaps ought to be investigated by federal and state officials charged with the enforcement of laws relating to Worker's Compensation, Unemployment Compensation, Fair Labor Standards, Social Security, state sales and use tax and federal income tax.

The initial effect of the majority's decision is to deny Flores the worker's compensation benefits for injury and income loss which are commonly available to other South Dakota workers. It places the burden of his care and support on the taxpayers of Lawrence County and the State of

South Dakota instead of on the logging industry where it belongs.

The ultimate effect of the majority's decision is to exempt the Black Hills logging industry from the worker protection laws with which every other non-farm industry in South Dakota must comply. One can read every line of the 62 titles in South Dakota's Codified Laws without ever discovering such a legislative intent. Unless the state and national legislatures expressly exempt the Black Hills logging industry from these worker protection laws, the industry should voluntarily comply. If it does not, it should be ushered, or dragged kicking and screaming, into compliance and into the twentieth century.

Taking account of the whole picture in this case, I am at a loss to discover any error in the trial court's well-supported conclusion that the employment status of Flores is functionally much closer to "employee" than to "independent contractor." * Regrettably, the substantial analytical and rhetorical powers of the majority opinion obscure the obvious rather than reveal it, preventing the majority from seeing "the forest for the trees."

I would affirm the circuit court, the Department of Labor and common sense.

---

* The majority opinion correctly cites, but fails to give effect to, the "long-standing rule that our worker's compensation laws are remedial in character and entitled to a liberal construction" (*citing Kennedy v. Hubbard Milling Co.,* 465 N.W.2d 792, 797 (S.D.1991) (Henderson, J., dissenting); and *Lawler v. Windmill Restaurant,* 435 N.W.2d 708, 709 (S.D.1989)). *See also Keil v. Nelson,* 355 N.W.2d 525, 528 (S.D.1984). This court has recently shown its willingness to enforce this rule of construction—at least where it was the *worker* seeking to avoid worker's compensation coverage in order to pursue a more lucrative settlement at tort. In *Jensen v. Sport Bowl,* 469 N.W.2d 370 (S.D.1991), we were so convinced that the legislature intended worker's compensation coverage to be universal that we unanimously upheld summary judgment against an injured minor who offered to prove that his employment was illegal under federal child labor laws. Now it appears that our conviction has deserted us in the face of the superior capacity of an *employer* to create a more plausible paper trail. Without a trace of irony, we now *reverse* a judgment following trial on the merits which relied in part on the same "long-standing rule" of presumptive coverage. Some future commentator more cynical than this writer may perceive a new *"Jensen–Egemo* rule" for disputed coverage: Employer wins.