520 So.2d 66 (1988)
William WALKER, Appellant,
v.
CITY OF TAMPA, Appellee.
No. BM-63.
District Court of Appeal of Florida, First District.
February 8, 1988.
John A. Chilldon, Tampa, for appellant.
Michael Fogarty, City Atty., and Stephen M. Barbas, Asst. City Atty., Tampa, for appellee.
WIGGINTON, Judge.
In this workers' compensation case, claimant appeals from the order of the deputy commissioner denying his claim for a lump sum advance payment of compensation or for resumption of permanent total disability benefits. The claim was denied on the basis of section 440.15(9), Florida Statutes (Supp. 1974), which states that no compensation will be payable to an employee who is permanently and totally disabled with no dependents and who subsequently becomes an inmate of a public institution.[1] *67 Claimant was injured on May 5, 1975, and was ultimately accepted as permanently and totally disabled. However, the employer/carrier suspended payment of PTD benefits on May 21, 1985, when claimant was arrested and charged with committing a criminal offense. At that time, claimant was detained in the county jail pending the posting of a bond. As a result of the employer/carrier's action, claimant lost his only source of income.
Before the deputy commissioner, claimant argued that the term "inmate of a public institution" should not include a pre-trial detainee and that section 440.15(9) is unconstitutionally discriminatory. Although the deputy held that the term "public institution" includes jails, as well as prisons and mental institutions, and that as long as claimant remained in a jail under some form of restraint he remained an inmate within the meaning of the statute, he declined to rule on the issue of the constitutionality of the statute due to his lack of jurisdiction. Thus, on appeal, claimant raises these same issues as well as argues that the deputy commissioner erred in holding that he was unable to determine the present value of compensation  when the parties stipulated to the present value  and improperly considered a "contingency" not permitted by section 440.20(10), Florida Statutes, in denying the advance payment based on claimant's being an inmate in a public institution. Because we hold that section 440.15(9) is unconstitutional as applied to appellant, we must reverse the order of the deputy commissioner.
The thrust of claimant's argument that section 440.15(9) is unconstitutional is that as applied to him it resulted in cutting off his only source of income which would have otherwise allowed him to post bond, whereas other injured employees  namely those who are temporarily totally disabled, temporarily partially disabled, or permanently partially disabled  by their exclusion from the statute, would have a source of funds to post a bond. At the hearing, claimant requested a lump sum settlement in the amount of approximately $95,000. From that fund he maintained that he would use $45,250 to post bond and would invest the remaining sum, with the exception of $10,000 reserved for attorney's fees, in an annuity. Consequently, by its precluding him from receiving his compensation benefits of a lump sum advance thereof, claimant argues that section 440.15(9) denies him equal protection of the laws, insofar as the "favored class" of inmates  the temporarily partially disabled, the temporarily totally disabled, and the permanently partially disabled  are entitled to receive compensation benefits.
In response, the employer/carrier argue that although the purpose of section 440.15(9) has not been placed on record by legislative history or explanation, it may be inferred from the language that the intent was to prevent receipt of double compensation that would allegedly occur from the support given the employee by the state institution in addition to the compensation payments, adding that such attempt to halt "double dipping" was held to be a legitimate purpose in Sasso v. Ram Property Management, 431 So.2d 204, 218 (Fla. 1st DCA 1983). Further, although without stating how, the employer/carrier maintain that the classification chosen by the legislature rationally advances this legitimate governmental objective.
In addressing the issues brought before us, we first note that section 440.15(9) has been treated sparingly by our courts. See Allure Shoe Corporation v. Lymberis, 173 So.2d 702 (Fla. 1965) (wherein the supreme court held that a mental hospital was indeed a "public institution," but that the record did not establish that the worker was ever permanently, totally disabled, and accordingly denied certiorari); Bekins Van Lines v. Johnson, 414 So.2d 1189 (Fla. 1st DCA 1982) (wherein this Court noted that section 440.15(9) is "applicable only to permanent total disability benefits," and not to *68 an award of temporary total disability benefits for the period of time during which the claimant was in prison); R.E. Dailey Company v. Dorman, 509 So.2d 377 (Fla. 1st DCA 1987) (wherein this Court reiterated that temporary partial disability and wage-loss benefits are based on actual wage-loss, and on that basis reversed the award of benefits during the time that claimant was incarcerated since he "clearly could not conduct a work search during that time, and there was no showing that claimant's loss of income was caused by the industrial accident"; section 440.15(9) was held not applicable since it applied only to PTD benefits). Thus, the issue before us is apparently one of first impression in this state. However, in addressing it, we confine our analysis to the question presented of whether section 440.15(9) unconstitutionally denies claimant equal protection of the laws where claimant is a permanently and totally disabled employee without dependents who was denied his benefits while incarcerated in a county jail prior to trial, and whose benefits were the only source of income from which he could have posted bond.
The issue so crystallized, we turn to the framework of analysis within which we must examine the statute and determine its constitutional frailties. Without doubt, our analysis is controlled by the rational basis test as described by this Court in Sasso v. Ram Property Management, and we must uphold the statute's classificatory scheme as long as it rationally advances a legitimate governmental objective. Stated differently, for section 440.15(9) to be constitutional as applied herein, there must be some reasonable basis for its classification, and its classification must further a legitimate state purpose. Sasso, 431 So.2d at 218, n. 18. In the instant case, as mentioned earlier, the employer/carrier maintain that the legitimate legislative objective of section 440.15(9) is to halt the practice of double dipping.[2] Assuming for the moment that that was indeed the legislative objective, and it is of course "`constitutionally irrelevant whether this reasoning in fact underlay the legislative decision,'" id. at 220, we fail to see any rational relationship between the objective and the statute's classificatory scheme. That is, we see no rational basis to deny a permanently and totally disabled claimant who is being detained prior to trial his only source of income to post bond when other injured employees, with perhaps less devastating physical impairments, will receive their benefits. Arising from a slightly similar situation, the opinion in Bilello v. A.J. Eckert Co., 43 A.D.2d 192, 350 N.Y.S.2d 815 (1974), provides persuasive reasoning. Therein the court held that
... [a] confinement which precludes participation in the labor market is not alone sufficient to deprive a former employee who has suffered a work-related disability of his right to benefits . .. To deny a claimant benefits while he is incarcerated awaiting trial is an unfair situation. It favors a defendant who is capable of posting bail over one who is unable to do so. Any rule which has the effect of predicating the right to compensation benefits upon the ability to furnish bail presents a serious question of denial of equal protection of the laws under the Fourteenth Amendment.
Id. at 194, 350 N.Y.S.2d at 817.
Additionally, here it is claimant's loss of wage earning capacity  not his actual loss of wages  which is compensable. See section 440.15(1)(b) and (d). Thus, claimant's incarceration has not altered his ability to work nor, technically, his concomitant right to compensation based on his inability to work.[3] Moreover, since the same holds true for an injured employee who is temporarily *69 but totally disabled, we consider it patently arbitrary to make a distinction between the two classes of claimants. Compare Sims v. R.D. Brooks, Incorporated, 389 Mich. 91, 204 N.W.2d 139 (1973). Indeed, we can perceive of no legitimate legislative purpose being advanced by denying benefits only to permanently and totally disabled claimants incarcerated while awaiting trial.
Since we hold that section 440.15(9) is unconstitutional as applied to appellant, we need not address his point that the deputy erred in interpreting the term "inmate" as applying to a claimant temporarily detained and preliminarily accused of a criminal offense, yet bondable. However, since the deputy denied claimant's claim for a lump sum advance payment of compensation or for the resumption of payment of compensation on the basis of section 440.15(9), we must also reverse on the remaining points and remand the cause to the deputy for reconsideration of the claim.
REVERSED and REMANDED for further proceedings consistent with this opinion.
BOOTH and BARFIELD, JJ., concur.
NOTES
[1] Section 440.15(9) states in full:

(9) EMPLOYEE BECOMES INMATE OF INSTITUTION.  In case an employee who is permanently and totally disabled becomes an inmate of a public institution, then no compensation shall be payable unless he has dependent upon him for support a person or persons defined as dependents elsewhere in this chapter, whose dependency shall be determined as if the employee were deceased and to whom compensation would be paid in case of death and such compensation as is due said employee shall be paid such dependents during the time he remains such inmate.
[2] Perhaps closely akin to that purpose is the one held legitimate behind Congress's blanket suspension of social security retirement benefits for incarcerated felons: the need to conserve resources where a prisoner's basic economic needs are provided from other public sources. Cf. Davis v. Bowen, 825 F.2d 799 (4th Cir.1987).
[3] Compare R.E. Dailey Company v. Dorman, 509 So.2d 377 (Fla. 1st DCA 1987) wherein, as noted above, we reversed an award of wage-loss benefits to an incarcerated claimant since he could not conduct a work search and could not and did not show that his loss of income was caused by the industrial accident.