1996 SD 92

**In the Matter of the UNEMPLOYMENT LIABILITY OF SHOPPERS GUIDE, Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF LABOR UNEMPLOYMENT INSURANCE DIVISION, Appellee.**

No. 19255.

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1996.

Decided July 24, 1996.

Steven J. Helmers of Lynn, Jackson, Shultz & Lebrun, Rapid City, for appellant.

Drew C. Johnson, Special Assistant Attorney General, Aberdeen, for appellee.

MILLER, Chief Justice (on reassignment).

[¶ 1] Shopper's Guide appeals a trial court order affirming a decision by the South Dakota Department of Labor holding it liable for unemployment insurance taxes on its carriers. We reverse.

## FACTS

[¶ 2] Shopper's Guide is a division of the Rapid City Journal newspaper and publishes a weekly advertising guide that is distributed free of charge. Shopper's Guide contracts with various carriers to deliver the paper on a weekly basis. David Lindermann was one of the carriers under contract with Shopper's Guide. Lindermann left that employment and filed a claim for unemployment insurance benefits. A hearing was held on his claim to determine whether he quit Shopper's Guide without good cause. The issue of whether or not he was an "employee" of Shopper's Guide within the meaning of the unemployment insurance law was not part of the hearing on his claim and was remanded to the Tax Department of the Unemployment Insurance Division for a determination.

[¶ 3] On March 3, 1994, the Tax Chief of the Unemployment Insurance Division issued a certified letter to Shopper's Guide making the following determination: "[I]t is the decision of this department that this individual [i.e., Lindermann], as well as any others operating in a similar capacity, is an *employee* and must be reported for state unemployment insurance tax purposes." (emphasis added). Counsel for Shopper's Guide subsequently requested an inter-departmental appeal of the Tax Chief's decision. A telephonic hearing was conducted by an Administrative Law Judge for the Department of Labor and the Administrative Law Judge later issued his findings of fact, conclusions of law and order affirming the determination of the Tax Chief.

[¶ 4] Shopper's Guide appealed the decision of the Department of Labor to the trial court. The trial court later entered its order affirming the decision of the Administrative Law Judge in its entirety. Shopper's Guide now appeals to this court.

[¶ 5] **I. Did the Department of Labor and trial court err in determining that**

**Shopper's Guide is liable for unemployment insurance taxes on its carriers?**

[¶ 6] *Shopper's Guide* raises several issues on appeal. However, all of its issues are subsumed in the general question of whether the Department of Labor and trial court erred in determining that Shopper's Guide must pay unemployment insurance taxes on its adult * carriers. Shopper's Guide contends the carriers are independent contractors for whom it is not required to pay unemployment insurance taxes. We agree.

[¶ 7] "SDCL 61-1-11 distinguishes employees and independent contractors for purposes of unemployment insurance tax liability." *Appeal of Hendrickson's Health Care*, 462 N.W.2d 655, 658 (S.D.1990). The statute provides:

> Service performed by an individual for wages is employment subject to this title unless and until it is shown to the satisfaction of the department of labor that:
>
> (1) The individual has been and will continue to be free from control or direction over the performance of the service, both under his contract of service and in fact; and
>
> (2) The individual is customarily engaged in an independently established trade, occupation, profession or business.

SDCL 61-1-11.

[¶ 8] To qualify for the independent contractor exemption under this provision, it must be established that the employee meets the elements outlined in both subdivisions (1) and (2) of SDCL 61-1-11, i.e., that the individual performing services is free from a certain degree of direction and control *and* that the individual is customarily engaged in an independently established trade or business. The burden is on the employer, "to prove the employees are independent contractors under the elements of SDCL 61-1-11." *Hendrickson's*, 462 N.W.2d at 658.

[¶ 9] In this instance, there is no dispute that Shopper's Guide pays wages to its carriers or that the carriers are free of the degree of direction and control necessary to establish their independent contractor status. However, the Department of Labor and, in turn, the trial court, determined that the carriers are *not* "customarily engaged in an independently established trade, occupation, profession or business." SDCL 61-1-11(2). For that reason, the Department and the trial court further determined that the carriers are not independent contractors, but, employees for whom Shopper's Guide must pay unemployment insurance taxes. It is this determination that Shopper's Guide appealed to the trial court and now appeals to this Court.

[¶ 10] "The ultimate determination of whether an individual is an employee or an independent contractor is a mixed question of law and fact fully reviewable by this Court. We give no deference to the decision of the administrative agency or the trial court." *Midland Atlas v. Dept. of Labor*, 538 N.W.2d 232, 235 (S.D.1995) (citations omitted).

[¶ 11] We most recently addressed the issue of independent contractor status in *Midland, supra.* Similar to this case, we considered whether certain sales representatives for an atlas publisher were employees or independent contractors for purposes of the publisher's unemployment insurance tax liability. The publisher had entered into written contracts with the sales representatives which contained the following provisions: (1) representatives set their own hours and sales method of approaching customers; (2) representatives were paid on a straight commission basis; (3) representatives provided their

---

* SDCL 61-1-26 provides:

> As used in this title, unless the context otherwise plainly requires, the term "employment" shall not include service performed by an individual under the age of eighteen in the delivery or distribution of newspapers or shopping news, not including delivery or distribution to any point for subsequent delivery or distribution.

There is no dispute between the parties over the fact that, under this provision, Shopper's Guide bears no unemployment insurance tax liability for any of its carriers under age eighteen. However, seventeen of the carriers at issue are age eighteen or older.

own vehicles and paid all expenses; (4) the publisher did not reimburse the representatives for any expenses; (5) the publisher paid no fringe benefits including vacations, insurance premiums or a profit sharing plan; (6) the representatives had discretion as to how to collect information for the publisher; (7) the publisher retained the right to inspect the work and approve the final product; (8) the representatives could hire assistants; (9) the publisher reserved the right to terminate the contract upon thirty days written notice or, for good cause, to terminate the contract immediately; (10) the representatives retained the right to carry other lines of work concurrent with the publisher's work; (11) representatives were required to maintain sufficient auto insurance; (12) before a representative could receive his commission, he had to send the publisher his production report; and (13) the publisher furnished the representatives with a receipt book, information sheets, a blue print map and a sample atlas.

[¶ 12] Given the contractual relationship created by the above provisions, we reversed departmental and circuit court determinations that the atlas representatives in *Midland* were employees rather than independent contractors. We reached that conclusion on the following foundation:

> In [*South Dakota Dep't of Labor, Unemployment Ins. Div. v. Tri State Insulation,* 315 N.W.2d 315 (S.D.1982) ], we considered the employment status of individuals engaged in selling insulation, awnings, windows and sidings for Tri State, a South Dakota company. 315 N.W.2d at 316. Our observations in that case are directly applicable to the issue presented here:
>
>> [These salespeople] may not have all of the accouterments one usually associates with those engaged in an independent business, trade, occupation, profession or business—but then, they need little more than an automobile and a ballpoint pen to carry on what for them is as tangible a trade as that, say, of a self-employed contract welder or automobile repairman. That they may be temporarily unemployed if not selling products for Tri State, one of its competitors, or

any other distributor of products, is not determinative of the issue.

> *      *      *      *      *      *

>> Were they not selling Tri State's products surely they would be engaged in selling those of someone else. [Though] their proprietary interest in their occupation may not be manifested visibly to the same degree of that of the barber, the baker, the plumber, the doctor, the lawyer or the man with an independent calling ... they do have a proprietary interest in their skills—in the ability to persuade someone to purchase a product that he might otherwise not have.
>
> *Id.* at 317–18.

Like the individuals in *Tri State,* all sales representatives for Midland have a proprietary interest in their ability to persuade others to buy. Whether they choose to expand their sales or business endeavors beyond their work for Midland is entirely an independent decision which they make, unfettered by Midland's managerial or economic influence. The breadth of their business enterprises is a function of the market and their own initiative, rather than any economic decisions or demands by Midland. *See Hendrickson's Health Care,* 462 N.W.2d at 659. By engaging in an independent economic enterprise, they assume the risk of their own unemployment. Consequently, we conclude that all sales representatives for Midland satisfy the independent contractor requirements of SDCL 61–1–11.

*Midland,* 538 N.W.2d at 236.

[¶ 13] A contractual relationship substantially similar to the one reviewed in *Midland* is present in the instant case: (1) carriers generally set their own hours, the only requirement being Shopper's Guide's preference that the papers be delivered within a "reasonable time" of every Friday evening; (2) carriers choose their own method of delivering the papers; (3) carriers are paid on a piece rate basis according to the number of papers delivered and individual negotiations with each carrier; (4) carriers provide their own means of conveyance, including vehicles, and pay all expenses; (5) Shopper's Guide does not reimburse the carriers for any ex-

penses; (6) there is no evidence that Shopper's Guide provides any fringe benefits to the carriers including vacations, insurance premiums or a profit sharing plan; (7) the carriers have discretion as to how to deliver the papers; (8) Shopper's Guide retains the right to spot check the carriers' work; (9) the carriers are free to hire assistants; (10) both Shopper's Guide and the carriers retain the right to terminate the contract; (11) the carriers retain the right to carry other lines of work concurrent with the work for Shopper's Guide; (12) when carriers complete their deliveries, they must notify Shopper's Guide; and (13) the only item furnished by Shopper's Guide is a carrier's bag if one is requested by a carrier.

[¶ 14] Given the substantial similarity between the contractual relationship under scrutiny in *Midland* and the one at issue in the instant case, we similarly conclude that the Shopper's Guide carriers are independent contractors customarily engaged in their own independent trade, occupation, profession or business. To paraphrase our conclusion in *Midland,* all the carriers for Shopper's Guide have a proprietary interest in their ability to provide prompt and efficient delivery services. Whether they choose to expand their delivery work beyond their work for Shopper's Guide is entirely an independent decision which they make, unfettered by the managerial or economic influence of Shopper's Guide. The breadth of their business enterprises is a function of the market and their own initiative, rather than any economic decisions or demands by Shopper's Guide. By engaging in an independent economic enterprise, they assume the risk of their own unemployment. Consequently, we conclude that all carriers over age eighteen for Shopper's Guide satisfy the independent contractor requirements of SDCL 61–1–11.

[¶ 15] The above conclusion is clearly consistent with that reached by other courts that have considered whether newspaper carriers are employees or independent contractors for unemployment insurance purposes. In *Venango Newspapers v. Unemp. Comp. Bd.,* 158 Pa.Commw. 379, 631 A.2d 1384, 1388 (1993), the Pennsylvania Commonwealth Court wrote:

Claimants admitted that they were free to perform delivery services for anyone who wished to contract with them—even competitors of [the newspaper]. In addition, the business of delivering newspapers or anything else is, by its very nature, not limited to a single employer. We came to the same conclusion in *York Gazette Co. v. Bureau of Employment Security,* 28 Pa-CommonwealthCt 410, 368 A.2d 1314 (1977), when confronted with an almost identical situation. In *York Gazette,* we held that where newspaper delivery persons own, operate and maintain their own vehicles in the delivery and may sub-contract the service, they hold a sufficient proprietary interest in the business of delivering newspapers as to satisfy the second prong of the ... test. Claimants, here, likewise hold a proprietary interest in their delivery service business.

[¶ 16] We agree. Therefore, we hold that the Department of Labor and trial court erred in determining that Shopper's Guide is liable for unemployment insurance taxes on its carriers.

[¶ 17] Reversed.

[¶ 18] AMUNDSON and KONENKAMP, JJ., concur.

[¶ 19] SABERS and GILBERTSON, JJ., dissent.

GILBERTSON, Justice, dissenting.

[¶ 20] In our previous cases addressing whether a person is an independent contractor or an employee, we have utilized an analysis based on criteria applying the general dictates of SDCL 61–1–11(2) to the particular facts of the case. *Midland Atlas Co., Inc., v. Dep't of Labor,* 538 N.W.2d 232 (S.D.1995) (sales representatives for atlas publisher); *Egemo v. Flores,* 470 N.W.2d 817 (S.D.1991) (log cutter); *In Re Appeal of Hendrickson's Health Care,* 462 N.W.2d 655 (S.D.1990) (nurses and nurses' aides); *Dep't of Labor v. Tri State Insulation Co.,* 315 N.W.2d 315 (S.D.1982) (sales person for insulation company). Here, such analysis is unnecessary as a specific statute exists to provide us the answer whether these carriers are "customarily engaged in an independently established

trade, occupation, profession or business." *Id.* SDCL 61–1–26 provides:

> As used in this title, unless the context otherwise plainly requires, the term 'employment' shall not include service performed by an individual under the age of eighteen in the delivery or distribution of newspapers or shopping news, not including delivery or distribution to any point for subsequent delivery or distribution.

[¶ 21] This provision demonstrates that the Legislature has specifically expressed itself on the issue of unemployment insurance tax liability for employees who distribute shopping news and determined that there should be no such liability for those delivery persons under age eighteen. "The legal maxim 'expressio unius est exclusio alterius' means 'the expression of one thing is the exclusion of another.' The maxim is a general rule of statutory construction." *Aman v. Edmunds Cent. School Dist. 22–5,* 494 N.W.2d 198, 200 (S.D.1992). Application of that maxim in this instance means that the Legislature also intended there should be unemployment insurance tax liability for any shopping news delivery person age eighteen or over.

[¶ 22] Here, there is no dispute between the parties over the fact that, under SDCL 61–1–26, Shoppers Guide bears no unemployment insurance tax liability for any of its carriers under age eighteen. However, the record reflects that seventeen of its carriers, including Lindermann, are eighteen or older. Accordingly, the strict construction of SDCL 61–1–26 mandated by its status as a tax exemption statute clearly requires unemployment insurance tax liability for those seventeen adult carriers and any other carriers similarly situated. *In re State & City Sales Tax Liability,* 437 N.W.2d 209, 211 (S.D. 1989).

[¶ 23] SDCL 61–1–26 aside, Shoppers Guide fails in its burden of proof to establish its carriers are independent contractors. It

is appropriate to carefully limit exemptions from the employment insurance law as its purpose is not to tax employers to fill the state treasury, but to "avoid the risk or hazards that will befall those who, because of employment, are dependent upon others for their livelihood." *Princess House, Inc. v. Dep't of Industry,* 111 Wis.2d 46, 330 N.W.2d 169, 180 (1983). Consistent with that policy, independent contractors are exempt because unemployment insurance "is designed to exclude from coverage those persons who are unlikely to be dependent upon others, even though they may perform services for others, because they have their own separately established business." *Id. See also Hendrickson's,* 462 N.W.2d at 659.

[¶ 24] Our cases focus on a proprietary interest test. It is defined in *Tri State,* 315 N.W.2d at 316, as follows:

> The language used [in SDCL 61–1–11] contemplates that one engaged in an independently established trade, occupation, profession or business has a proprietary interest therein to the extent that he can operate it without hindrance from any individual whatsoever. An established business is one that is permanent, fixed, stable and lasting.

*Id.*

[¶ 25] In this case, just as with the nurses in *Hendrickson's,* there is no evidence that the carriers hold themselves out to the public as engaged in an independent business which exists separate and apart from Shopper's Guide. There is no evidence that they advertise their delivery services; there is no evidence that the carriers have any clientele independent of that provided by Shopper's Guide; and there is no evidence that they have business premises or business cards. Unlike the salespersons in *Tri State* and *Midland,* here there is no evidence of any particular skill in which the carriers hold a proprietary interest.[1] In fact, delivery of

---

1. The act of selling something to a customer when that customer would not ordinarily seek to otherwise purchase that item is a skill not possessed by the public at large. In *Tri State,* the salesmen sold insulation and siding for homes. In *Midland,* the salesmen sold atlases. These products are not necessities of life, such as food and shelter, that a potential customer would ordinarily seek out without some outside inducement to purchase them. In both cases this skill at sales was directly related to compensation. No sales—no compensation. In contrast, the carriers in the case now before us do not have to

newspapers is a job which society and the law recognize can be safely and competently performed by children. *See* SDCL 61–1–26. Unlike the log cutter in *Egemo,* there is no evidence of any sort of substantial financial investment made by the carriers in their own business.

[¶ 26] Based upon the foregoing analysis,[2] there is no evidence that the Shopper's Guide carriers are assuming the risk of their own unemployment with a proprietary interest in an enterprise created and existing separate and apart from their relationship with Shopper's Guide. *Hendrickson's, supra.* There is no evidence that the carriers have a proprietary interest in an enterprise that will survive the termination of their relationship with Shopper's Guide. *Id.* Salespersons and log cutters are professionals at their craft who likely devote their working years to their calling. Can the same be said of paper carriers? If the new standard is now that the person in question "have a proprietary interest in their ability to provide prompt and efficient delivery services," then it will be the unusual person who is not exempted as most persons performing tasks for compensation should have as their goal to provide their services in a prompt and efficient manner.

[¶ 27] For the foregoing reasons I respectfully dissent and would affirm the circuit court.

[¶ 28] SABERS, J., joins this dissent.

sell anything to get paid. They give their publication away for free.

2. The majority at page 587 sets forth thirteen criteria which it argues support the conclusion that adult carriers are independent contractors exempt from this tax. Yet, the same criteria apply to carriers who are children and the Legislature felt it necessary to pass SDCL 61–1–26 to exempt these children from the payroll tax.