1997 SD 63

**Robert JACKSON, Plaintiff and Appellee,**

v.

**LEE'S TRAVELERS LODGE, INC., a South Dakota Corporation, Defendant and Appellant,**

and

**Darrell Nelson and Emma Nelson, jointly and severally; and Minnesota Mutual Fire & Casualty Company, Defendants.**

No. 19645.

Supreme Court of South Dakota.

Considered on Briefs Feb. 20, 1997.

Decided June 4, 1997.

T.F. Martin, Brookings, for plaintiff and appellee.

Timothy M. Gebhart of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1.] Lee's Travelers Lodge [Lee's] appeals a partial summary judgment determining Robert Jackson's [Jackson] status as an employee and a final judgment of workers' compensation benefits in favor of Jackson. We affirm in part, reverse in part and remand in part.

### FACTS AND PROCEDURE

[¶ 2.] Jackson was hired by Lee's through Job Service of South Dakota in May 1989 as a day laborer to do weeding, planting and trimming on the premises. Lee's, a South Dakota corporation, consists of a group of four boarding houses in Rapid City which houses retired and disabled veterans and is owned and operated by Darrel and Emma Nelson. The Nelsons reside in one of the four boarding houses.

[¶ 3.] Jackson did weeding and planting of flower beds as instructed by Emma Nelson. He used his own small shovel in this work and testified that he was instructed to come early in the morning but left at the end of the day or as he finished his work. Darrel Nelson testified Jackson arrived and left when he wanted to, telling Darrel he was finished for the day. It is undisputed Jackson was paid an hourly wage in cash, with no

deductions, at the end of each day or two by Darrel. Neither party kept any records establishing the first or any of the days Jackson worked for Lee's, how many hours he worked, or the total amount of money he earned working for Lee's.

[¶ 4.] On June 29, Darrel asked Jackson if he could trim a tree on the property. Jackson said he could but, as it was late in the afternoon, would return to trim the tree the next day. The following day, Jackson arrived for work and set about to trim the dead branch Darrel had designated. The equipment Jackson used for this job, an extension ladder, bow saw, rope, and can of black paint, belonged to Lee's. After he had climbed the ladder but prior to completing the job, Jackson fell to the sidewalk below. He was knocked unconscious and taken by ambulance to the hospital where it was learned he suffered injuries to his jaw, ribs, and left arm.

[¶ 5.] After spending ten days in the hospital, Jackson returned to Lee's and did weeding from July 9 to August 19, 1989. The following Monday, August 21, 1989, Jackson was convicted of second degree burglary and sentenced to serve thirteen years in the state penitentiary. He was paroled on April 3, 1995. During the time Jackson was in the penitentiary, he underwent medical treatment and several operations as a result of his work-related injury, much of which, up to this point, has been at public expense because of his status as a penitentiary inmate.

[¶ 6.] Jackson brought suit for this injury, claiming he was an employee of Lee's and entitled to workers' compensation benefits under SDCL 62–3–11 or, alternatively, tort damages for negligence.[1] The workers' compensation action was brought in circuit court pursuant to SDCL 62–3–11 which provides in part:

Any employee, who is employed by an employer who is deemed not to operate under this title in accordance with § 62–5–7, . . . may elect to proceed against the

employer in any action at law to recover damages for personal injury . . . or may elect to proceed against the employer in circuit court under the provisions of this title, as if the employer had elected to operate thereunder . . . and the measure of benefits shall be that provided by § 62–4–1 plus twice the amount of other compensation allowable under this title; provided that such employee . . . shall not recover from both actions.

Lee's did not have workers' compensation coverage for its employees.[2] Lee's claimed that Jackson was an independent contractor and, in response to Jackson's tort claim, denied it was negligent. The trial court granted Jackson's motion for partial summary judgment after determining Jackson was an employee of Lee's. A trial was held October 26, 1995 on the question of Jackson's entitlement to workers' compensation benefits. At the conclusion of this trial, Jackson was awarded permanent total disability benefits and medical expenses.

[¶ 7.] Lee's appeals raising the following issues:

1. Whether Jackson is an employee or independent contractor?

2. If Jackson is an employee, whether he is a domestic service worker and thus, exempt from coverage under the workers' compensation act?

3. Whether Jackson proved his benefit rate?

4. Whether Jackson was entitled to disability benefits while incarcerated?

5. Whether Jackson was entitled to an award of medical expenses and prejudgment interest absent a showing he had paid or was responsible for those expenses?

6. Whether Jackson is permanently and totally disabled?

---

1. This alternative cause of action is not before us on appeal.

2. Darrel and Emma Nelson also were named as individual defendants. Because the decision of the circuit court awarded workers' compensation benefits, the judgments appealed from are only against Lee's and the Nelsons are no longer individual defendants.

## ANALYSIS AND DECISION

**[¶ 8.] 1. Whether Jackson is an employee or independent contractor?**

[¶ 9.] The question of whether an individual is an employee or independent contractor presents a mixed question of fact and law fully reviewable by this Court. *Shoppers Guide v. S.D. Dep't of Labor*, 1996 SD 92, ¶ 10, 551 N.W.2d 584, 586 (citing *Midland Atlas v. Dep't of Labor*, 538 N.W.2d 232, 235 (S.D.1995)). As such, we give no deference to the decision of the administrative agency or trial court. *Id.*

[¶ 10.] SDCL 62–1–3 defines "employee" under the workers' compensation statutes, in pertinent part, as "every person, including a minor, in the services of another under any contract of employment, express or implied...." In *Egemo v. Flores*, 470 N.W.2d 817, 821 (S.D.1991), we recognized the statutory presumption that an individual is an employee until his status as an independent contractor is established. SDCL 61–1–11 provides guidance for distinguishing between employee and independent contractor status in workers' compensation cases. *Davis v. Frizzell*, 504 N.W.2d 330, 332 (S.D. 1993). The statute provides:

> Service performed by an individual for wages is employment subject to this title unless and until it is shown to the satisfaction of the department of labor that:
>
> (1) The individual has been and will continue to be free from control or direction over the performance of the service, both under his contract of service and in fact; and
>
> (2) The individual is customarily engaged in an independently established trade, occupation, profession or business.

[¶ 11.] The burden is on the employer to prove the individual is an independent contractor under the elements of SDCL 61–1–11, and both elements must be established, i.e., that the individual is performing services free of direction and control and that the individual is customarily engaged in an independently established occupation or business. *Shoppers Guide*, 1996 SD 92, ¶ 8, 551 N.W.2d at 586 (citing *Appeal of Hendrickson's*

*Health Care*, 462 N.W.2d 655, 658 (S.D. 1990)).

[¶ 12.] We have previously stated that "each case must be determined on its own facts, with all the features of the relationship considered." *Davis*, 504 N.W.2d at 331. The facts of the present case indicate that Jackson performed services for hourly wages, was not free from control or direction, and was provided the items of equipment necessary for performing these services, save the small shovel, which he kept in his knapsack. Jackson's deposition testimony resolves the question of Lee's right to terminate the employment relationship at will and without liability. Jackson stated therein that, although he decided at what hour he would leave for the day, Emma Nelson had instructed him on the work she wanted done and "you either stayed there or she fired you, take your choice." Emma Nelson demonstrated a similar belief when she testified by deposition testimony that although she did not know how long it would take Jackson to perform the work she asked, and that he had indicated to her he could not work every day, if it would have taken him two months, she "would have fired him." She and Darrel both testified that they believed if they did not want Jackson to come back anymore they could have told him so.

[¶ 13.] As to the second element of the test under SDCL 61–1–11, we find Jackson was not customarily engaged in an independently established trade or business. Jackson did not hold himself out as an independent business person, nor did he advertise his services, provide printed business cards, or have business premises. *See Hendrickson's Health Care Service*, 462 N.W.2d at 659. The fact that Jackson was hired through a labor broker, here, South Dakota Job Service, also undermines a finding that Jackson was an independent contractor. As a day laborer, Jackson had no enterprise created and existing separate and apart from his relationship with Lee's that would survive the termination of this relationship. *See Egemo*, 470 N.W.2d at 822.

[¶ 14.] We affirm the trial court's determination that Jackson was an employee of Lee's at the date of his injury.

[¶ 15.] **2. If Jackson is an employee, whether he is a domestic service worker and thus, exempt from coverage under the workers' compensation act?**

[¶ 16.] SDCL 62-3-15(1) specifically exempts domestic servants from workers' compensation coverage "unless working for an employer for more than twenty hours in any calendar week and for more than six weeks in any thirteen-week period." Defining the scope of the term "domestic servants" presents a question of first impression in this state. Statutory interpretation is reviewed under a de novo standard. *Wharf Resources v. Farrier*, 1996 SD 110, ¶ 5, 552 N.W.2d 610, 612.

[¶ 17.] The trial court found that, at the time of the injury, Jackson had worked for Lee's for more than six weeks and for more than twenty hours during the calendar week. This finding is substantiated by the deposition testimony of both Jackson and Darrel Nelson, though neither kept records of the number of weeks or of the hours per day Jackson worked for Lee's. However, we need not rely on the number of hours and weeks Jackson worked to determine this question. The record reflects Jackson was not laboring for Darrel and Emma Nelson's personal benefit, but was working for a corporation, the business of which was providing room and board services for retired and disabled veterans. The trial court made similar findings. Under the circumstances present here, we conclude Jackson was not a "domestic servant" under our workers' compensation act and therefore is not exempt from coverage under SDCL 62-3-15(1).

[¶ 18.] In *Griebel v. Industrial Comm'n*, 133 Ariz. 270, 650 P.2d 1252 (1982), the court applied a "profit test" to determine whether an injured worker was excluded from coverage as a domestic servant.

> We believe the rule to be that if the master is regularly using his servant's labor in a commercial enterprise, that is, attempting to profit in an entrepreneurial capacity from the labor of the servant, then the master is an "employer" within the [workers' compensation statute's] definition ... notwithstanding the place where the servant works or the nature of his duties. On the other hand, if the master is the sole consumer of the servant's labor, and that labor is directed to the construction, maintenance or repair of the master's private properties or care of the master's family, and that labor is not within the usual trade, business, profession or occupation of the master, then the servant is a "domestic servant" under the [statute].

*Id.* 650 P.2d at 1255. The Arizona court found this rule followed the purpose of workers' compensation law that the burden for the injury from industrial causes is to be placed upon the industry. *See Oviatt v. Oviatt Dairy, Inc.*, 80 S.D. 83, 85, 119 N.W.2d 649, 650 (1963) ("A recognized purpose of the Workmen's Compensation Law is to transfer from the worker to the employer, and ultimately to the public, a greater portion of the economic loss due to industrial accidents and injuries...."). We note the *Griebel* rationale comports with that of other state courts having determined the definition of "domestic servants" under their workers' compensation acts. *See* collected cases cited in 1C Arthur Larson, Larson's Workmen's Compensation Law § 50.30 (1996).

[¶ 19.] We believe this rationale is sound and apply it here to find Jackson was not a domestic servant exempted from coverage under SDCL 62-3-15(1). All of the testimony indicates Lee's is a business, providing lodging and meals for veterans. Jackson was hired to perform yardwork on the premises surrounding the four boarding houses and was injured in the performance of this work. Lee's argument that Jackson was trimming a tree in the Nelsons' yard adjacent to their personal residence at the time of injury, and therefore merely performing personal services for the Nelsons' own benefit, is refuted by the record. The deposition testimony of Darrel Nelson demonstrates there were approximately seven boarders living in the downstairs portion of this residence while the Nelsons were residing upstairs on the date of Jackson's injury. Nevertheless, we do not apply the profit test to the single duty Jackson was performing at the time of injury, but apply it to all of the labor Jackson was hired to do and whether

Lee's was using Jackson's labor to "attempt to profit in an entrepreneurial capacity."

### [¶ 20.] 3. Whether Jackson proved his benefit rate?

[¶ 21.] The trial court found Jackson to be within the provisions of SDCL 62–4–27[3] governing the determination of average weekly wages for seasonal employees. In determining Jackson's benefit rate to be $123.08, the trial court noted it reviewed information from the witnesses and calculations provided by Jackson's attorney, as well as a trial exhibit.

[¶ 22.] The burden is on the employee to prove his earnings and where this evidence is speculative, the burden is not met and the claimant is not entitled to disability benefits. *Sanborn v. Farmers Union Elevator Co.*, 68 S.D. 138, 140, 299 N.W. 258, 258–59 (1941). Lee's claims Jackson has failed to meet his burden because he admitted, on cross-examination, that he was paid in cash and kept no records of the number of hours or days he worked for Lee's.

[¶ 23.] However, Jackson's testimony on cross-examination is not viewed in isolation. He also testified he was paid $4.00 per hour in cash and worked on average 40–45 hours per week for Lee's. Darrel Nelson testified Jackson was paid between $3.75 and $4.00 per hour in cash and worked 3–4 days per week the first week but only 1–2 days per week after that. We also note the parties stipulated that Jackson earned $4.00 per hour. The trial court found Nelson had failed to provide adequate testimony or evidence regarding Jackson's work schedule. The trial court stated it made its determination based on its review of the testimony of witnesses in this case and information provided by Jackson's attorney. Lee's has not shown this determination to be clearly erroneous based solely on the fact that Jackson was paid in cash and that neither he nor the Nelsons kept records of his time worked.

3. This statute provides:
   As to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, the average weekly wages shall be ascertained by

### [¶ 24.] 4. Whether Jackson was entitled to disability benefits while incarcerated?

[¶ 25.] Jackson was released from the hospital on July 9, 1989. Between July 9 and Saturday, August 19, he returned to work pulling weeds for Lee's, but did no more tree trimming. The following Monday, August 21, 1989, Jackson was jailed on a criminal charge. He remained imprisoned until his release on parole on April 3, 1995. No impairment rating was assigned Jackson until January 3, 1995, however, the trial court found that Dr. J.D. Sabow, Jackson's treating neurologist, declared him totally disabled on July 21, 1989. This finding has not been appealed.

[¶ 26.] Noting Jackson was paid wages for work he performed between July 9 and August 19, 1989, the trial court awarded Jackson permanent total disability benefits from August 20, 1989 through the date of trial, March 17, 1996. Permanent total disability exists if the employee is "totally incapacitate[d] ... from working at any occupation which brings him an income." SDCL 62–4–6(23). Under this state's odd-lot doctrine, a person is also considered permanent totally disabled for workers' compensation purposes if his physical condition, in combination with his age, training and experience, and the type of work available in the community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income. *Hendrix v. Graham Tire Co.*, 520 N.W.2d 876, 880 (S.D. 1994); *Shepherd v. Moorman Mfg.*, 467 N.W.2d 916, 918 (S.D.1991).

[¶ 27.] Whether a totally disabled employee may collect workers' compensation benefits while incarcerated is a question of first impression for this Court. The South Dakota Department of Labor addressed this question involving temporary total disability benefits in Miller v. River City Builders, HF No. 365, 1990/91 (October 21, 1991). In *Miller,*

multiplying the employee's average day's earnings by number of days which it is customary in such employment to operate during a year, but not less than two hundred, and dividing by fifty-two.

the Department held that "[i]ncarceration, in itself, does not require a suspension of temporary total disability payments." The Department noted this holding was in line with the rule of the majority of jurisdictions having addressed this issue "that incarceration is not an independent intervening cause; it is loss of earning capacity, not loss of wages per se, that is compensable in workers' compensation cases, and a claimant's earning capacity does not change by virtue of incarceration alone." (citations omitted). The Department further noted its analysis was similar to that used by this Court in *Beckman v. John Morrell & Co.*, 462 N.W.2d 505 (S.D.1990). In *Beckman*, we determined the claimant's participation in a strike, rather than a medical problem, precluded him from being offered light duty or favored work, thereby terminating benefits. *Id.* at 509. The Department stated in *Miller*, "[a] strike, like incarceration, 'removes a worker from the labor market,' but appears to play no role in a claimant's benefit eligibility unless the claimant is medically capable of performing work." In the present case, Jackson was found not medically capable of performing work and it is this reason, rather than his incarceration, which has removed him from the labor market.

[¶ 28.] Twenty-one other states have previously addressed this issue.[4] Nine of these jurisdictions suspend workers' compensation benefits by state statute during a period of incarceration.[5] At least four of these states, Louisiana, Michigan, Ohio and Oregon, at one time permitted the collection of benefits during incarceration, in part on the grounds that their state's workers' compensation act did not forbid it. Legislation was subsequently enacted in these states which terminated benefits to the incarcerated employee. Interestingly, one state, Colorado, which had legislation denying benefits to prisoners unless benefits were assigned to the prisoner's dependents, recently repealed this legislation. Presumably, Colorado now permits workers' compensation benefits to be awarded to prisoners since there was no new law enacted denying coverage.[6]

[¶ 29.] Two states, Georgia and New York, distinguish between the period of incarceration awaiting trial prior to conviction and the period of incarceration after conviction, permitting benefits to be collected in the former instance, but finding benefits have been for-

---

**4.** *See* 1B Arthur Larson, Larson's Workmen's Compensation § 47.31(g) (1996); Annotation, *Workers' Compensation: Incarceration as Terminating Benefits*, 54 A.L.R.4th 241 (1987) for a discussion of some of these states' courts' holdings. On a related topic, *see* Steven A. Weiler, *A Time for Recognition: Extending Workmen's Compensation Coverage to Inmates*, 61 NDLRev 403 (1985) (discussing the issue of coverage to inmates injured during the period of their incarceration).

**5.** *See Miles v. F.D. Shay Contractor, Inc.*, 626 So.2d 74 (La.App.Ct.1993) (La.Rev.Stat.Ann. § 23:1201.4 (West 1997)), effective January 1, 1990, (suspends benefits while claimant is incarcerated unless dependents rely upon the benefits for support); *Gifford v. Nelson Freightways*, 645 A.2d 11 (Me.1994) (workers' compensation statute enacted in 1991 provides for forfeiture of benefits by recipient who is incarcerated); *Connolly's Case*, 418 Mass. 848, 642 N.E.2d 296 (1994) (Mass.Gen.Law ch. 152, § 8(2)(j) (1991)) (statute permits termination of workers' compensation benefits due to incarceration; applies retroactively); *Jones v. Dep't of Corrections*, 185 Mich.App. 65, 460 N.W.2d 229 (1990) (Mich. Comp.Laws § 418.361(1); Mich.Stat.Ann. § 17.237(361)(1), effective July 30, 1985) (statute denies benefits for periods of incarceration; ap-

plies retroactively); *Parker v. Union Camp Corp.*, 108 N.C.App. 85, 422 S.E.2d 585 (N.C.Ct.App. 1992) (no direct statute, but court found existing statutes indicated legislative intent to suspend workers' compensation benefits during incarceration); N.D.Cent.Code § 65–05–08(3) (1995) (statute adopted in 1989 which suspends benefits if incarcerated claimant has no dependents but will pay benefits to dependents of prisoner if he has a wife or children); *State ex rel. Ashcraft v. Industrial Comm'n*, 34 Ohio St.3d 42, 517 N.E.2d 533 (1987) (Ohio Rev.Code Ann. § 4123.54, effective August 22, 1986); *Johnson v. RSG Forest Products*, 129 Or.App. 192, 878 P.2d 449 (1994) (Or.Rev.Stat. § 656.160, enacted 1990 in response to *Forshee & Langley Logging v. Peckham*, 100 Or.App. 717, 788 P.2d 487 (1990))(statute provides injured employee is not eligible to receive workers' compensation during time employee is incarcerated, to include time spent in jail before conviction); *Cummings Lumber Co. v. WCAB*, 669 A.2d 1027 (Pa.Cmwlth. 1995) (WCA PA Code § 306(a)(2), effective August 31, 1993) (suspends payments of benefits during period of incarceration after a conviction; prospective application).

**6.** Colo.Rev.Stat.Ann. § 8–52–104.5, repealed effective July 1, 1996. *See also Wood v. Beatrice Foods Co.*, 813 P.2d 821 (Colo.Ct.App.1991).

feited in the latter.[7] These decisions are grounded in constitutional law and the common law; there is no statutory authority on point in either of these two states. The New York court, cited with approval by the Georgia court, stated its reasoning as follows:

A confinement which precludes participation in the labor market is not alone sufficient to deprive a former employee who has suffered a work-related disability of his rights to benefits.... To deny a claimant benefits while he is incarcerated awaiting trial is an unfair situation. It favors a defendant who is capable of posting bail over one who is unable to do so. Any rule which has the effect of predicating the right to compensation benefits upon the ability to furnish bail presents a serious question of denial of equal protection of the laws under the Fourteenth Amendment. The determinative question should be whether or not the claimant, while in jail, could or could not have worked in any event because of his injury. His dependents should not be denied support and the carrier relieved of its obligation when 'the physical and industrial disability and the loss of wage-earning capacity on which the award was bottomed still continues.'

*Bilello,* 350 N.Y.S.2d at 817. The New York court, without discussion or citation, summarily noted that termination of benefits during the period of incarceration *after* conviction was proper. The Georgia court noted the claimant in the case before it did not challenge the suspension of his workers' compensation benefits after his conviction.

[¶ 30.] Ten states permit an incarcerated individual or his dependents to receive work-ers' compensation benefits.[8] One of these states, Virginia, permits workers' compensation benefits to incarcerated individuals who have been found to be totally disabled, but does not permit benefits to prisoners who have suffered only partial disability. A Florida court found a similar statute in its state unconstitutional as a violation of equal protection as applied to a particular claimant where these benefits were the only source of income from which the injured individual could post bond. The courts having addressed this issue and finding in favor of benefits continuing during the period of incarceration stressed that what is being compensated after an employee has suffered a work-related injury and been awarded benefits is his wage earning capacity, not the actual wage loss, and that incarceration does not affect an individual's capacity to earn wages. "[T]he fact that a claimant is unemployable for reasons other than his injury is not dispositive. The issue is whether a claimant has suffered some loss of earning capacity as a direct result of his work-related injury." *Last,* 409 S.E.2d at 336. At least two of these ten states expressly noted that the right to receive workers' compensation benefits is a property right and either by state constitution, or by state statute, their state did not permit the automatic forfeiture of property rights upon a conviction. *United Riggers Erectors,* 640 P.2d at 193; *Last,* 409 S.E.2d at 336. The majority of these states acknowledged their workers' compensation laws were creatures of statute, and absent statutory authority from the legislature to the contrary, they would not deny a claimant workers' compensation benefits for an injury he received before his incarceration.

---

7. *Mintz v. Norton Co.,* 209 Ga.App. 109, 432 S.E.2d 583 (1993); *Bilello v. A.J. Eckert Co.,* 43 A.D.2d 192, 350 N.Y.S.2d 815 (N.Y.1974); *see also Tallini v. Martino & Son,* 58 N.Y.2d 392, 461 N.Y.S.2d 754, 448 N.E.2d 421 (1983) (confinement to psychiatric ward for criminally insane was not held to preclude claimant from receiving workers' compensation benefits; *Bilello* held not to apply as claimant was acquitted of criminal charges and held not responsible due to criminal insanity).

8. *See* footnote 5 and accompanying text, *supra.* *See also United Riggers Erectors v. Industrial Comm'n of Ariz.,* 131 Ariz. 258, 640 P.2d 189 (1981); California adopted an amendment in 1988 which entitles inmate receiving permanent disability benefits for pre-incarceration injury to have the benefits held in trust for him by the Department of Corrections during his incarceration; *Walker v. City of Tampa,* 520 So.2d 66 (Fla.Dist.Ct.App.1988); *Hardin's Bakery v. Taylor,* 631 So.2d 201 (Miss.1994); *SIIS v. Campbell,* 109 Nev. 997, 862 P.2d 1184 (1993); *Last v. MSI Constr. Co., Inc.,* 305 S.C. 349, 409 S.E.2d 334 (1991); *King v. Industrial Comm'n of Utah,* 850 P.2d 1281 (Utah Ct.App.1993); *Baskerville v. Saunders Oil Co., Inc.,* 1 Va.App. 188, 336 S.E.2d 512 (1985); *In re Injury to Spera,* 713 P.2d 1155 (Wyo.1986).

[¶ 31.] The Wyoming Supreme Court, and Utah Court of Appeals finding Wyoming's reasoning persuasive, declared the right to receive benefits was contractual, based on a kind of statutory insurance contract and an employee's benefits could not be suspended or terminated due to incarceration unless the contract so specified. The Wyoming court distinguished the law of workers' compensation from the principles of tort law:

Instead of suing his employer for negligence and having to prove duty, breach, proximate cause, and damages, the worker in our state must file for workers' compensation benefits for which his employer is ultimately liable. Essentially, the system provides disability insurance coverage for the worker. His right to benefits arises when certain conditions precedent occur, primarily, when he suffers a disabling work-related injury. Under contract principles, the worker should not be denied his benefits after the contingency arises, unless a provision in the statutory contract between the worker, on the one hand, and the State and employer, on the other, explicitly suspends the benefits.

*Spera,* 713 P.2d at 1157; *see also King,* 850 P.2d at 1295 (noting that "[a]bsent an explicit statutory provision, the Industrial Commission is not free to reduce statutorily-created benefits.").

[¶ 32.] The trial court in the present case found the reasoning by the Ohio Supreme Court in *State ex rel. Brown v. Industrial Comm'n,* 68 Ohio St.3d 45, 623 N.E.2d 55 (1993), persuasive and quoted extensively from this opinion in its own memorandum decision incorporated by reference into its findings of fact and conclusions of law. We note that *Brown* involved an injury suffered prior to the 1986 enactment of an Ohio statute denying benefits to a claimant during a period of incarceration. We also note the *Brown* court distinguished between a temporary total disability compensation and permanent total disability compensation, finding the former was to compensate an employee for his or her lost earnings, while the latter was to compensate for lost earning capacity. *Id.* 623 N.E.2d at 57. In holding the claimant who had suffered a pre–1986 injury

which left him permanently and totally disabled was entitled to receive benefits during his period of incarceration, the *Brown* court stated:

A finding by the commission that a claimant is permanently and totally disabled is a finding that the claimant is permanently removed from the work force by reason of his or her injury. In a situation where it has been determined that a claimant is entitled to permanent total disability compensation, it is of no consequence that a subsequent event may arise, such as the claimant's incarceration, which may further impair his or her ability to work because the subsequent event does not negate the causal relationship between the work-related injury suffered by the claimant and his or her absence from the work force. In other words, when a claimant has been determined to be permanently and totally disabled, it is not the subsequent incarceration which prevents the claimant's return to sustained remunerative employment, it is the disability itself.

As a final note, we realize that payment of workers' compensation to a penal inmate may be offensive to many. However, sentiment aside, we are required to follow the law pronounced by the General Assembly. Numerous courts outside this state that have confronted this issue have declined to terminate or suspend benefits absent express statutory authority.

*Id.* 623 N.E.2d at 58–59 (citations omitted).

[¶ 33.] After studying this issue and the decisions of state courts that have previously considered it, we also find the *Brown* court's reasoning persuasive. We have long recognized that workers' compensation law in our state is statutory and where there is no statutory exception that eliminates benefits when a worker is jailed, this Court is without authority to carve out such an exception. The Legislature has demonstrated it knows how to exempt a person from the right to collect benefits when it so desires. *See* SDCL 62–4–37 (no compensation allowed when injury is due to employee's willful misconduct); *Therkildsen v. Fisher Beverage,* 1996 SD 39, ¶ 10, 545 N.W.2d 834, 836. Likewise, the Legislature has also acted in

other areas to deny certain rights to persons who are imprisoned and has chosen not to include workmen's compensation benefits in that enumeration of denied rights. *See* SDCL 23A–27–35 (which denies prisoners the right to hold public office, become a candidate for public office and to serve on a jury). Our benefits for permanently disabled employees, like Ohio's, are meant to compensate for lost earning capacity rather than lost wages. *See Hendrix,* 520 N.W.2d 876; *Stormo v. Strong,* 469 N.W.2d 816 (1991). Jackson's earning *capacity* did not change because of his incarceration, but was the result of his work-related injury. He was already permanently disabled when he entered the penitentiary.

[¶ 34.] We note that permitting Jackson to receive benefits during his period of incarceration, absent statutory authority to the contrary, comports with our view that "[w]orker's compensation laws are remedial in nature and are entitled to liberal construction to effect coverage." *Howie v. Pennington County,* 521 N.W.2d 645, 646 (S.D.1994) (citing *Phillips v. John Morrell & Co.,* 484 N.W.2d 527, 531 (S.D.1992)); *Oviatt,* 80 S.D. at 85, 119 N.W.2d at 650.

[¶ 35.] There remains the question of whether it is statutorily improper in South Dakota to allow an individual to personally collect workers' compensation benefits while in prison, as during incarceration, the individual is a ward of the state who incurs none of the normal costs of living. Our Legislature has chosen to address that issue with the passage of SDCL 24–2–28 which provides:

> An inmate under the jurisdiction of the Department of Corrections [DOC] is liable for the cost of the inmate's confinement which includes: room and board charges; medical, dental, optometric, and psychiatric services charges; vocational education

training; and alcoholism treatment charges.

Consideration may be given the following factors: net income, net worth, number of dependents, and any existing obligations. If the secretary of corrections determines that the inmate is unable to pay, the secretary may waive all or part of the payment for the costs of the inmate's confinement.

This statute, when taken into consideration with the workers' compensation statutes, establishes a public policy that if a worker is injured in the course of his employment and subsequently incarcerated, it is proper that the employer as the source of the disability, rather than the public who financially maintains the prisons, should incur the obligation of support in lieu of the workers' lost opportunity to work.

[¶ 36.] This statute is mandatory in its effect with discretion existing only as to the amount owed the State. The record is clear that neither party to this proceeding served notice upon the State, which would have allowed the State to intervene pursuant to this statute to protect its interests. We reverse and remand with instructions to allow the State to intervene to protect its rights under SDCL 24–2–28 and SDCL 1–15–11.[9] If any funds are paid out by Lee's prior to a final determination of the State's claims, these funds are to be escrowed with the Clerk of Court's trust fund pending final resolution of this question.[10]

[¶ 37.] **5. Whether Jackson was entitled to an award of medical expenses and prejudgment interest absent a showing he had paid or was responsible for those expenses?**

[¶ 38.] Lee's argues under this issue that Jackson is not entitled to an award of medical expenses and prejudgment interest because he obtained medical treatment while he was in the state penitentiary and has not

---

9. Under SDCL 1–15–11 the DOC is authorized to bring suit to protect any property rights it may have.

10. This proceeding was brought as a direct action in circuit court pursuant to SDCL 62–3–11. For those claims which are initiated in the Department of Labor, the Department should notify the Department of Corrections of a claim which may involve the application of SDCL 24–2–28 with leave for DOC to intervene prior to any approval of compensation between the employee and employer pursuant to SDCL 62–7–5 or prior to a contested hearing pursuant to SDCL 62–7–12.

proven he will have to pay for this treatment. The record reflects the parties stipulated to Jackson's medical expenses in the amount of $45,695.82 in this case and that such bills were reasonable.

[¶ 39.] The circuit court held that Jackson was entitled to this amount. The court determined that the medical expenses were awarded to Jackson as he was "entitled to reimbursement." However, the problem with this conclusion is that at the present time, Jackson is not entitled to any reimbursement. Due to his incarceration, his medical expenses were paid by the State of South Dakota. As with the previous issue, we reverse and remand the order for payment of the $45,695.82 in medical bills to allow the state to intervene to protect its rights under SDCL 24–2–28 and SDCL 1–15–11.

[¶ 40.] The circuit court also held that Jackson was entitled to nearly $28,000 in prejudgment interest. The purpose of prejudgment interest is to compensate a party for the loss of use of money. *SD Bldg. Auth. v. Geiger–Berger Assocs.*, 414 N.W.2d 15, 19 (SD 1987) (citing *Bunkers v. Guernsey*, 41 S.D. 381, 170 N.W. 632 (1919)). To this point, Jackson has sustained no loss of use of money because he never paid the underlying bills. This is consistent with our workers' compensation holdings that such laws are not intended to provide a windfall to the employee. *Nilson v. Clay County*, 534 N.W.2d 598, 602 (S.D.1995); *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 360 (S.D.1992). The state's position on interest is also unknown. Thus, at this point it would be premature to address the issue any further prior to remand on the underlying medical bills.[11]

[¶ 41.] **6. Whether Jackson is permanently and totally disabled?**

▪ [¶ 42.] The trial court found that Jackson had made a prima facie case that he is in continuous, severe, debilitating pain and that his physical condition, when coupled with his age, educational background and training, demonstrates he is obviously unemployable and in the odd-lot total disability category since his fall from the tree on June 30, 1989. Lee's was unable to meet its burden to show there was suitable employment actually available in Jackson's community for a person with Jackson's limitations.

[¶ 43.] Under this state's odd-lot doctrine:

the ultimate burden of persuasion remains with the claimant to make a prima facie showing that his physical impairment, mental capacity, education, training and age place him in the odd-lot category. The burden then shifts to the employer to show that some form of suitable work is regularly and continuously available to claimant.

*Petersen v. Hinky Dinky*, 515 N.W.2d 226, 231 (S.D.1994). We have recognized two avenues for making the required prima facie showing.

First, if the claimant is obviously unemployable, then the burden of production shifts to the employer to show that some suitable employment is actually available in claimant's community for persons with claimant's limitations. A claimant may show obvious unemployability by: (1) showing that his physical condition, coupled with his education, training and age make it obvious that he is in the odd-lot total disability category, or (2) persuading the trier of fact that he is in fact in the kind of continuous, severe and debilitating pain which he claims. Second, if the claimant's medical impairment is so limited or specialized in nature that he is not obviously unemployable or relegated to the odd-lot category, then the burden remains with the claimant to demonstrate the unavailability of suitable employment by showing that he has unsuccessfully made reasonable efforts to find work. The burden will only shift to the employer in this second situation when the claimant produces substantial evidence that he is not employable

---

11. We have applied the collateral source rule in cases where the medical services were gratuitously provided, *Degen v. Bayman*, 90 S.D. 400, 241 N.W.2d 703 (1976) or where the defendant's wrongful acts were the proximate cause of the injury, *Moore v. Kluthe & Lane Ins.*, 89 S.D. 419, 234 N.W.2d 260 (1975). Here neither rationale applies to justify the invocation of this rule. The penitentiary was mandated by law to provide the medical services to an inmate, and Lee's was not found to be a tortfeasor, only an employer.

in the competitive market. Thus, if the claimant is obviously unemployable, he does not have to prove that he made reasonable efforts to find employment in the competitive market.

*Id.* at 231–32 (internal citations and emphasis omitted).

[¶ 44.] Jackson's original injuries from the fall were a fractured jaw, fractured upper extremity, fractured ribs and injury to the nerves of the brachial plexus. Dr. Sabow, Jackson's first treating neurologist, declared him totally disabled in July 1989. In January 1995, after Jackson underwent many medical procedures, including surgery, some of which ultimately proved less than successful, Dr. Sabow placed Jackson's impairment rating at 100%. Little could be done to correct the physical condition so treatment concentrated on alleviating what Dr. Sabow described as Jackson's "burning pain 100% of the time." At the time of trial, Jackson was taking five Tylenol IV with codeine per day, under doctor's orders, to relieve his pain. The trial court noted the result of taking this medication left Jackson unable to drive and that his actions and thought processes were not good. The trial court also mentioned Jackson had dropped in weight from approximately 200 pounds to 132 pounds. The court noted Jackson was "one of the most pitiable persons this court has observed."

[¶ 45.] As to Jackson's educational background and training, the record reflects he was born in 1944, was once briefly married and has fathered one child, now an adult. He has an eighth grade education and has earned his G.E.D. His work history consists of working in mines and steel mills, and working at ranching, logging, welding, fencing, and driving an eighteen-wheeler. He has lived in this state since 1987, performing mainly odd jobs (what the trial court deemed "spot jobs") from 1987 until the time of his injury in 1989. The only work he has done since his injury was returning to Lee's and pulling weeds for a time with his uninjured arm. There is no evidence in the record that he worked while in prison.

[¶ 46.] The trial court found Jackson to be "obviously unemployable" under this state's odd-lot doctrine. The issue we must deter-mine is whether the record contains substantial evidence to support the agency's determination. *Helms v. Lynn's, Inc.*, 1996 SD 8, ¶ 10, 542 N.W.2d 764, 766. Here, the evidence is substantial that Jackson has made out his prima facie claim.

[¶ 47.] We affirm except for issues four and five, which we reverse and remand to allow the State to intervene.

[¶ 48.] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.

